[Civ. No. 22020. Second Dist., Div. Three. July 18, 1957.]

MITCHELL M. BROCKMAN, as Administrator, etc., Appellant, v. ERWIN EDWARD WAGENBACH, Respondent.

Milton Wichner for Appellant.

Dryden, Harrington, Horgan & Swartz and Vernon G. Foster for Respondent.

WOOD (Parker), J.—Appeal by plaintiff from an order (1) granting defendant's motion to set aside a default judgment (after publication of summons), and (2) allowing defendant to file an answer.

Appellant contends that the court abused its discretion in making the order, and that the order is contrary to law.

Defendant Erwin Edward Wagenbach will be referred to as the defendant.

On March 18, 1953, Herman Feldman commenced an action for damages for personal injuries received on April 12, 1952, when an automobile, driven by defendant, backed into him while he was walking across a street at an intersection.

An order for publication of summons was made on February 2, 1955. The order recited that defendant could not after due diligence be found within the state. An affidavit of publication of summons was filed on March 28, 1955. The default was entered on August 3, 1955, and judgment upon the default was entered September 2, 1955, for $5,144.37.

Mr. Feldman died February 4, 1955; and on August 24, 1955, Mitchell M. Brockman, administrator of the estate of Herman Feldman, was substituted as plaintiff in the place of Herman Feldman.

On March 14, 1956, defendant filed a notice of motion to set aside the default judgment, and for an order permitting defendant to file his verified answer. The notice of motion recited that the original of the verified answer was attached to the notice. It appears, however, that the proposed answer was not attached to the notice but was filed on the same day that the notice of motion was filed. Affidavits in support of, and in opposition to, the motion were filed. On March 28, 1956, a minute order was made which stated: "Motion Granted." The appeal is from that minute order.

Appellant (plaintiff) argues that the court abused its discretion in granting the motion, for the reasons that: defendant had knowledge of the pendency of the action since January, 1954, and he unreasonably and in bad faith delayed entering his appearance in the action; he has not shown that he has a meritorious defense; plaintiff has been prejudiced by the delay; and the default of defendant has not been vacated.

Section 473a of the Code of Civil Procedure provides: "When from any cause the summons in an action has not

been personally served on the defendant, the court may allow, on such terms as may be just, such defendant or his legal representatives, at any time within one year after the rendition of any judgment in such action, to answer to the merits of the original action.''

An affidavit of Lowell L. Dryden (one of the attorneys for the defendant), in support of the motion, was in substance as follows: he is one of the attorneys for the Northwest Casualty Company; the files in his office reflect that summons and complaint in the case were delivered to his office on January 29, 1954, and the files informed him that the summons had been served on John Schuman, defendant's brother-in-law, at 2041 Catalina Street; a special appearance was entered for the purpose of making a motion to quash the service of summons; the motion was granted; at the time of transmittal of the summons and complaint, affiant was not authorized by defendant or anyone to accept service of the summons and complaint; affiant has examined the file in the matter and feels that defendant has a good and meritorious defense to the issues in the matter; affiant first learned that default judgment had been entered on March 7, 1956; he acted in good faith and with due diligence to cause the default to be set aside.

An affidavit of Victor C. Monk, in support of the motion, was in substance as follows: he is an adjuster employed by the Northwest Casualty Company; he informed the attorney for plaintiff that he could not accept service of process ''upon the defendant''; he had not conspired with defendant or anyone to obstruct or evade the service of process.

An affidavit of defendant, in support of the motion, was in substance as follows: he resides at 2041 Catalina Street, Los Angeles; he has been a resident of Los Angeles County since 1913, except that he was in the armed services from 1941 to 1946 and he resided in Montana from 1946 to 1952; in January, 1952, he returned to Los Angeles County and ''took up residence'' at 1748 North Verdugo Road; in February, 1953, he purchased a home at 2331 Mira Vista, Montrose; in March, 1953, he went to Europe, and he remained there until September, 1953, when he returned to California and took up residence at 2331 Mira Vista; in March, 1955, he was divorced and has since resided at 2041 North Catalina Street, Los Angeles; at all times mentioned (in the affidavit), ''with the exceptions noted,'' he has been a bona fide resident of Los Angeles County; he has not been personally served with sum-

mons or complaint in the matter, nor has he been served by mail or in any manner with a copy of the summons and complaint; during his residence in California, he has not made any effort to avoid service of process in this proceeding; he has not conspired with Victor C. Monk or anyone or made any effort to avoid service of process; he has a good and meritorious defense to the matter as appears by his answer, a copy of which is attached to his affidavit; he had no knowledge that a judgment had been rendered against him until March 7, 1956, and upon ascertaining "the same" he has, with due diligence, urged the court to set aside the default judgment.

An affidavit of Milton Wichner (attorney for plaintiff), in opposition to the motion to set aside the judgment, was in substance as follows: the cause of action arose on April 12, 1952; several days later, affiant was "contacted" over the telephone by Victor C. Monk who stated that he was the adjuster for Northwest Casualty Company, the insurance carrier for defendant, and he was investigating the claim of Herman Feldman; thereafter, negotiations for compromise of Mr. Feldman's claim were conducted between affiant and Monk until January 28, 1953, when affiant wrote to Monk, and stated: "As you can understand, the time is running quickly in this matter and unless we arrive at a mutually acceptable settlement, I shall be compelled to file my action within the next twenty days"; the action was filed on March 18, 1953, and a copy of the summons and complaint was delivered to the marshal at Glendale with instructions to serve defendant at 1748 North Verdugo, Glendale, the address listed in the police report; the marshal returned the summons with a certificate that he was unable to serve the defendant for the reason defendant had moved and gone to Europe; affiant states upon information and belief that, at all times after February 1, 1954, defendant knew of the pendency of the action; at all times since said February 1 defendant was represented by counsel who knew of the pendency of the action; Mr. Feldman died on February 4, 1955; affiant states upon information and belief that defendant has no meritorious or any defense to the action; defendant has not acted in good faith, has not exercised due diligence, and has been guilty of inexcusable neglect. Mr. Wichner also stated in said affidavit that he incorporated therein, by reference, all the affidavits on file in the action which were in support of plaintiff's request for publication of

summons; and that he also incorporated therein, by reference, his affidavit which was in opposition to the motion to quash service of summons.

An affidavit of Herman Feldman, in support of his application for an order for publication of summons, was in substance as follows: defendant conceals himself to avoid service of summons; there has not been filed in the recorder's office any certificate of residence as provided in section 1163 of the Civil Code.

An affidavit of Milton Wichner, in support of the application for order for publication of summons, was in substance as follows: he is the attorney for plaintiff; on March 21, 1953, he requested that the marshal serve defendant at the address of defendant listed in the police report, of the Glendale police, as 1748 North Verdugo, Glendale, California; the marshal returned the summons with a certificate that he was unable to effect service upon defendant for the reason defendant "had moved and gone to Europe"; affiant retained the services of Jack Burke, a private investigator, to trace defendant; in January, 1954, Burke expressed the belief that defendant resided at 2041 North Catalina, Los Angeles; affiant instructed Burke to serve the summons and complaint upon the party believed to be defendant; about February 5, 1954, defendant made a special appearance in the action, through his attorneys Sampson and Dryden, moving to quash the service of summons; in support of the motion, an affidavit of John Schuman was filed, stating that he was the brother-in-law of defendant, that at all times since August 8, 1953, defendant was a resident of Los Angeles County and was available for personal service within the county, and the alleged service was made upon Schuman and not upon defendant; the motion to quash was granted; all efforts of Burke to trace defendant were unavailing; on August 7, 1953, affiant asked the Department of Motor Vehicles for the address of defendant; that department stated that his address was 1748 North Verdugo Road, Glendale; on October 1, 1954, affiant checked again with the department to ascertain the address of defendant, and was advised that as of September 28, 1953, the address was 2331 Mira Vista, Montrose; on November 4, 1954, affiant requested William MacCormack to serve defendant at that address, but he was unable to find defendant there; defendant's name is not listed in any of the Los Angeles County telephone directories; defendant is not a registered voter or property owner; de-

fendant apparently has "no recorded legal residence"; it is obvious that defendant has been concealing himself to avoid service; on numerous occasions affiant has requested members of the firm of Sampson and Dryden, attorneys for defendant, to produce defendant for service of summons or to advise affiant of defendant's address so that he might be served; said attorneys had stated that they had no authority to accept service or to divulge defendant's address; the attorneys have refused to give such information; on numerous occasions affiant has asked the representative of Northwest Casualty Company, the insurance carrier for defendant, for information as to defendant's residence, and such information has been refused; Victor Monk, an adjuster for that company, stated to affiant on numerous occasions that defendant was absent from the state, and that the company had instructed Monk not to divulge to affiant any information concerning the whereabouts of defendant; affiant states upon information and belief that the company and Monk have wilfully aided and abetted defendant "to evade service of process"; Monk told affiant that if Mr. Feldman died the liability of the company would be substantially reduced, and since Mr. Feldman was 82 years of age, the company could not be blamed for taking advantage of the possibility of plaintiff's demise prior to the time judgment could be procured.

An affidavit of Jack Burke, in support of the application for order for publication of summons, was in substance as follows: he is a private investigator; about December 9, 1953, he visited 1748 North Verdugo Road, Glendale, which according to the police department was the address of defendant; that address is a dwelling containing 32 apartments; a check was made of all letter-boxes there but the name of defendant did not appear on any of the boxes; the manager advised affiant that defendant had not returned to that address after leaving for Europe, and the manager was not aware of defendant's whereabouts; affiant mailed a registered letter to defendant, which letter was returned showing that defendant's agent lived at 2041 North Catalina, Los Angeles; affiant found a man at that address, who "answering" the description of defendant, claimed he was someone else; affiant served that man with summons and complaint; further efforts of affiant to locate defendant were of no avail.

An affidavit of William MacCormack, in support of the

application, was in substance as follows: on November 6, 1954, he attempted to serve the summons on defendant at 2331 Mira Vista, Montrose; he was told that defendant had moved from that address leaving no forwarding address; affiant was told by the postman in that area that defendant had not filed any request for change of address.

The affidavit of Mr. Wichner, in opposition to the motion to quash service of summons, included several statements that were in his other affidavits; and his affidavit, in opposition to that motion, included additional statements which were as follows: on February 1, 1954, affiant received a telephone call from Mr. Robinson of the firm of Sampson and Dryden wherein he stated that Sampson and Dryden were attorneys for defendant, that their time to answer would expire on February 4, they had not had an opportunity to fully discuss the facts with defendant and they would not have enough time to prepare the answer prior to February 4; affiant granted the extension requested; on February 2, 1954, affiant received a letter from Sampson and Dryden, a copy of which was attached to the affidavit, and on the same day affiant replied by letter, a copy of which was attached to the affidavit; affiant did not receive a reply to his letter; on February 8, 1954, affiant received copies of defendant's motion to quash services of summons. The letter of Sampson and Dryden, referred to in the affidavit, stated that it was to confirm their understanding that they might have until February 12, 1954, within which to plead or otherwise appear. The letter of Mr. Wichner in reply thereto, referred to in the affidavit, stated that he granted Sampson and Dryden the extra time within which to answer only.

As above shown, the default judgment was entered September 2, 1955, and the motion to set it aside and for permission to answer was filed March 14, 1956, and the motion was granted March 28, 1956. It thus appears that the motion was made and granted within a year after the judgment was rendered. Under section 473a of the Code of Civil Procedure, above quoted, when a defendant has not been personally served with summons, the court may allow him, within a year after rendition of judgment, to answer to the merits of the action. In the present case, defendant was not served personally with summons. Appellant argues that since defendant remained inactive for an unreasonable time after he had actual knowledge of the pendency of the action, the court should not have set aside the judgment; that appellant had actual knowl-

edge of the pendency of the action since January, 1954, when his attorney received the copies of summons and complaint which were served on defendant's brother-in-law. The order for publication of summons was not made until approximately a year after the summons was served on defendant's brother-in-law. ■ Of course, during that time defendant was not required to appear in the action. (See *Penland* v. *Goodman*, 44 Cal.App.2d 14, 17 [111 P.2d 913].)

■ A defendant is entitled to relief under section 473a of the Code of Civil Procedure if he has not been served personally with summons and if he has shown that he has a good defense to the action on the merits, unless it appears that he had actual notice of the pendency of the action and that his failure to appear therein was due to his neglect or laches and has resulted in prejudice to plaintiff, under such circumstances that it would be inequitable to grant the relief. (See: *Thompson* v. *Sutton*, 50 Cal.App.2d 272, 276-277 [122 P.2d 975]; *Guardianship of Stanfield*, 32 Cal.App.2d 283, 285-286 [89 P.2d 696]; *Hiltbrand* v. *Hiltbrand*, 218 Cal. 321, 323-324 [23 P.2d 277]; *Boland* v. *All Persons*, 160 Cal. 486, 490 [117 P. 547]; *Gray* v. *Lawlor*, 151 Cal. 352 [90 P. 691]; *In re Mercereau*, 126 Cal.App. 590, 600-601 [14 P.2d 1019].) ■ Section 473a was not designed to afford relief to a defendant who with "full knowledge" of constructive service upon him remains inactive. (*Pierson* v. *Fischer*, 131 Cal.App. 2d 208, 212 [280 P.2d 491]; *Gardner* v. *Gardner*, 72 Cal.App. 2d 270, 274 [164 P.2d 500].) ■ Whether or not relief should be granted under said section 473a is a matter within the discretion of the trial court and its order will not be disturbed except for an abuse of discretion. (*Trujillo* v. *Trujillo*, 71 Cal.App.2d 257, 260 [162 P.2d 640]; *Thompson* v. *Sutton*, 50 Cal.App.2d 272, 276 [122 P.2d 975].)

In the present case, it does appear that defendant had knowledge of the pendency of the action—his counsel having made the motion to quash service of summons (after summons had been served on defendant's brother-in-law). It does not appear that defendant knew, until a week before seeking relief from the default judgment, that plaintiff had proceeded to obtain service by publication of summons. Copies of summons and complaint were not mailed to defendant. (Such mailing was not required, however.) Counsel, who had appeared for defendant upon the motion to quash service of summons, was not notified by plaintiff of the publication of summons or of the entry of the default. Apparently about six months elapsed,

after the entry of judgment, before defendant knew that judgment had been entered. It does not appear that plaintiff made any effort to enforce the judgment. Plaintiff asserts that the conduct of defendant in failing to appear made it inequitable to set aside the judgment, in that, Mr. Feldman is now deceased and other witnesses are probably not available. It is to be noted that Mr. Feldman died two days after the order for publication of summons was made. It thus appears that the change in plaintiff's position, with respect to the testimony of Mr. Feldman, occurred before the entry of the default judgment. In other words, plaintiff's position in a trial upon the merits after setting aside the default judgment would be the same, with respect to the testimony of Mr. Feldman, as plaintiff's position would have been, with respect to such testimony, before setting aside the default judgment. Plaintiff made no showing that any other witness was unavailable.

The affidavit of Mr. Dryden (one of defendant's attorneys), in support of the motion under section 473a, does not show that defendant has a meritorious defense to the action. His affidavit states that he has examined the file in the matter and he feels that defendant has a good and meritorious defense; but his affidavit does not state that he has conferred with defendant, or that defendant has communicated with him in any way. His affidavit does not state the contents of the file or state who prepared the documents which are in the file. The affidavit of defendant states that he has a good and meritorious defense as appears by his answer, a copy of which is attached to his affidavit. A copy of his answer was not attached to his affidavit but his answer was filed herein. His verified answer alleges a meritorious defense. In the answer, defendant admitted that "there was a contact" between his automobile and Herman Feldman, a pedestrian; and he denied that Mr. Feldman was damaged by any act of defendant. As affirmative defenses, the answer alleged that the damage, if any, to Mr. Feldman was the result of an unavoidable accident; and that Mr. Feldman was guilty of negligence which proximately contributed to the happening of the accident. ■ A showing of a meritorious defense may be made by a verified proposed answer. (*Beard* v. *Beard,* 16 Cal.2d 645, 648 [107 P.2d 385].)

Appellant argues further that since the defendant did not make a motion to set aside the default entry, and since the order did not set aside the default entry, the court had no power to permit defendant to file an answer. The notice of

motion, involved herein, stated that defendant "will move the court to set aside the default judgment . . . and to make its order permitting defendant to file his verified answer. . . ." The notice also stated that the motion "will be made pursuant to the provisions of Section 473a of the Code of Civil Procedure . . . together with the affidavits filed herewith . . . ." The notice did not state that a motion would be made to set aside the default entry. The affidavit of Mr. Dryden, in support of the motion, stated that he had acted with due diligence "to cause said *default* to be set aside." The affidavit of defendant, in support of the motion, stated that with due diligence he had urged the court "to set aside said default judgment." The affidavit of Mr. Wichner (attorney for plaintiff), in opposition to the motion, contained statements pertaining to: conversations with the insurance adjuster; plaintiff's unsuccessful efforts to serve defendant personally; knowledge of defendant and his attorney as to the pendency of the action; lack of meritorious defense; and lack of due diligence on the part of defendant. The affidavit also stated that it would be inequitable to grant relief to defendant. Apparently the affidavit was intended to emphasize plaintiff's claim that defendant was properly in default and should not be relieved therefrom. The minutes of the court were as follows: "Nature of proceedings: Deft's Motion to Set Aside Default Judgment, and for Order Allowing Deft to File Answer. Motion Granted." There was no formal signed order. Plaintiff did not question the scope of the motion at the time it was presented and determined.

Respondent (defendant) argues to the effect that since his motion recites that it was made pursuant to section 473a, and since it requested permission to file an answer, it was evident that it was his intention to move for complete relief. In *Airline Transport Carriers* v. *Batchelor,* 102 Cal.App.2d 241 [227 P.2d 480], defendant filed a notice of motion (under section 473) to set aside a default judgment on the grounds of surprise, inadvertence and excusable neglect; and with the notice he filed his answer, an affidavit of his attorney, and his own affidavit in which he asked for permission to plead to the complaint. In that case the minute order of the trial court was that ". . . the court orders the motion to set aside and vacate judgment by default be granted . . . defendant to file bond in the sum of $3,000 . . . ." A few weeks later defendant was served with an order to show cause why judgment should not be entered, and why judg-

ment should not be issued against the bond, on the ground that the default entry had not been set aside. Defendant therein made a motion to correct the minute order (to set aside the default entry). That motion was denied, and it was ordered that judgment be entered and that execution issue upon the cash bond. In that case the reviewing court said (p. 246) : The "terms of said motion and the contents of the documents attached thereto adequately apprised plaintiff (respondent) that defendant (appellant) was seeking to obtain relief from the effect of his default . . . . [T]hat when the court ordered that the motion to set aside and vacate the judgment by default [be granted], and required that a bond . . . be filed by appellant the court intended to grant appellant complete relief from said default." It was also said therein (p. 246) that the reviewing court was convinced that the trial court "intended to vacate the default along with the default judgment." Also it was said therein (p. 247) : "The law would indeed be impotent if a motion such as the one in the instant case *made within the six months' period,* could be argued on the basis of whether or not appellant, because of surprise, inadvertence and excusable neglect should be relieved of his default, and then after said motion is granted by the court, as was done in this case, the plaintiff be permitted to have another judgment entered and deprive defendant of a trial upon the merits." (Italics added.)

In *Weck* v. *Sucher,* 96 Cal.App. 422 [274 P. 579], a motion was made (under section 473) to set aside a default judgment upon the grounds of mistake, surprise and excusable neglect. The motion was granted. Plaintiff appealed, contending that the moving papers and order related exclusively to vacating the judgment and did not affect the default entry. In that case the reviewing court said (pp. 426-427) : "Plaintiff did not question the scope of the motion at the time it was presented and determined . . . . However, even assuming that he may do so now, we find no merit in the point because the terms of said motion and the contents of the documents attached thereto adequately apprised plaintiff that defendants were seeking to obtain complete relief under section 473 from the effect of their default, and in our opinion the order subsequently made by the court pursuant to said motion is legally sufficient, in form and substance, to grant such relief."

█ As above shown, the proceedings in the Airline case

and the Weck case, just referred to, were pursuant to section 473 of the Code of Civil Procedure, which section pertains to personal service of summons. Under that section, a defendant seeks relief from his own omission after personal service of summons, and he has the burden of showing that his omission was the result of his mistake, surprise, inadvertence or excusable neglect. ■ In the present case the proceeding was pursuant to section 473a, which pertains to constructive service of summons. Under that section a defendant, who has not been served personally, seeks permission, within a year after the rendition of judgment, to answer to the merits of the action; and the burden is upon him to show that he has not been personally served and that he has a meritorious defense, but the burden is upon plaintiff to show that it is inequitable to permit defendant to answer. ■ It thus appears that section 473a covers a class of cases different from the class of cases covered by section 473, and that under section 473a a defendant, who has not been served personally, is in a more favorable position in that he is entitled to answer to the merits if he has a meritorious defense and if it would not be inequitable (under circumstances above stated) to permit him to answer. In *Doxey* v. *Doble*, 12 Cal.App.2d 62 [54 P.2d 1143], it was said (pp. 65-66) that the provisions of section 473a cover a class of cases entirely different from the class of cases covered by section 473, and under section 473a "it was evidently the intention of the legislature, as indicated by the plain provisions of said code section to allow the trial court one year after the rendition of a judgment within which it may exercise its discretionary power in granting appropriate relief to enable the defendant to answer to the merits of the action." ■ Under section 473 the court may relieve a party from "a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect." The words "other proceeding" therein include a default entry. Under that section application for relief from a default entry must be made within six months after the default was entered. In section 473a there is no provision with respect to relief from a default entry—the provision therein is that permission to answer to the merits may be granted within a year after the rendition of the judgment. It is to be noted that the time within which the permission may be granted does not run from the entry of the default but runs from the rendition of judgment. (*Doxey* v. *Doble*,

*supra,* 65.) It thus appears that, under section 473a, permission to answer to the merits of the action may be granted at a time which is more than a year after the default entry.

In the present case, it is apparent that defendant was seeking, and the court was intending to grant, complete relief from the default. As above shown, the affidavit of defendant's attorney referred to seeking relief from *the default.* The motion stated specifically that it was made pursuant to the provisions of section 473a of the Code of Civil Procedure. The object to be accomplished by a motion pursuant to that section is permission to answer to the merits of the action. There was no formal signed order, and the minute order was in general terms, referring to the *nature of the proceedings* as a motion to set aside default judgment and for permission to file verified answer, and the order being, "Motion Granted." Such an order, granting permission pursuant to said section 473a to answer to the merits of the action, and being made within a year after entry of default judgment, should be interpreted as granting complete relief from the default resulting from constructive service of summons (including relief from the default entry). The court did not abuse its discretion in granting the motion.

Appellant cites *Howard Greer etc. Originals* v. *Capritti,* 35 Cal.2d 886 [221 P.2d 937], wherein there was an appeal from an order denying a motion to set aside a default judgment under section 473, after personal service of summons. The court in affirming the order stated in effect that it would be an idle act to vacate the judgment, for the reason the default entry had not been set aside and the default would stand of record and entitle Greer to a judgment. Prior to making the motion to set aside the default judgment therein, defendant had made a motion (upon the same grounds) to set aside the default entry, and the motion had been denied. That case is distinguishable from the Airline case, *supra,* and the present case. In the Greer case the court had previously denied a motion, under section 473, to set aside the default. In the Airline case no ruling had been made as to the default entry and the motion to vacate the default judgment was made within the six months' period after the entry of default. In the present case no ruling had been made as to the default entry, and the motion, under section 473a, to set aside the judgment and for permission to file an answer was made within one year after the rendition of the default judgment.

Appellant also cites *Cumberpatch* v. *Nolan,* 125 Cal.App.2d 205 [270 P.2d 540, 271 P.2d 519], wherein the trial court granted a motion to set aside a default judgment, after personal service of summons. No ruling was made regarding the default entry. The reviewing court affirmed the order on the ground that a reversal of the order would serve no useful purpose since the default entry was still of record and another judgment could be entered upon the default. The order in that case was made under section 473, whereas in the present case the order was made under section 473a.

In the present case, a question arises as to the validity of the default entry upon which appellant relies. This question has not been raised by either party. Of course, if there was not a proper default entry there would be no basis for appellant's argument that another default judgment could be entered. Mr. Feldman (plaintiff) died February 4, 1955. When the default was entered on August 3, 1955, the representative of Mr. Feldman's estate had not been substituted as plaintiff in the place of Mr. Feldman. The representative was substituted on August 24, 1955. In *Machado* v. *Flores,* 75 Cal.App.2d 759 [171 P.2d 440], which was an action to enjoin enforcement of a default judgment, the judgment had been entered before the personal representative of the deceased plaintiff had been substituted as plaintiff. It was held therein (p. 762) that the default judgment was an irregularity. (See also *Uppman* v. *Eyraud,* 151 Cal.App.2d 728 [312 P.2d 57]; *Boyd* v. *Lancaster,* 32 Cal.App.2d 574 [90 P.2d 317]; *Maxon* v. *Avery,* 32 Cal.App.2d 300, 302 [89 P.2d 684].) In view of the conclusion hereinabove that the order in the present case granted complete relief to defendant (including the setting aside of the default entry), it is not necessary to decide the question as to the validity of the default entry.

The order is affirmed.

Shinn, P. J., concurred.