[Civ. No. 66008. Second Dist., Div. Seven. May 10, 1983.]

NICHOLAS ROSENTHAL et al., Plaintiffs and Respondents, v.
CARRIE GARNER, Defendant and Appellant.

Counsel

Paul K. Duffy for Defendant and Appellant.

Janoff, Karpel & Cowan and Jerome J. Karpel for Plaintiffs and Respondents.

Opinion

SCHAUER, P. The principal question asked is whether an attorney's knowledge of the existence of a newly filed lawsuit (against his client) arising out of old litigation in which he represented the client should be imputed to the client under agency principles so that the client is deemed to have had

"actual notice" under Code of Civil Procedure section 473.5. We answer in the negative and reverse the trial court's order denying defendant's motion to set aside the default and default judgment taken by plaintiff respondents against defendant appellant.

Duffy is a lawyer, apparently of uncommunicative nature, as will develop. He represented appellant Garner in earlier automobile accident litigation against third parties named Fahad. Garner obtained a judgment for damages against the Fahads and sought to enforce the judgment by a levy upon certain real property under a writ of execution. Such real property, once owned by the Fahads, had been conveyed to respondents Rosenthal before the levy. Both the sheriff's notice of levy and notice of sale under execution were directed only to ". . . the right, title and interest of . . ." the Fahads. A request on behalf of the Rosenthals was made to Duffy to remove any cloud on title created by the levy and notice of sheriff's sale under execution. Twelve days before the scheduled sheriff's sale of the real property on October 13, 1976, Duffy directed the sheriff to cancel the sale, and no sale was held. Thereafter, on November 5, 1976, counsel for the Rosenthals advised Duffy by letter that unless specified wording satisfactory to the former for the purpose of removing the purported cloud on title were presented ". . . within 10 days from the date of this letter, you will leave us no alternative but to proceed to clear my client's property title and to sue . . . as a result of the levy filed on my client's property."

Duffy did not respond and the Rosenthals brought the instant suit against Garner on April 15, 1977, by filing a "complaint for abuse of process, to remove cloud on title, slander of title, declaratory relief, intentional infliction of emotional distress, and trespass." On August 17, 1977, the Rosenthals' attorney mailed to Duffy a copy of such complaint and summons thereon with a covering letter which stated: "If you are authorized to accept service on behalf of Carrie Garner, please execute the enclosed Notice and Acknowledgement of Receipt and return it to me in the envelope so provided. If you are unable to accept service, please provide us with the address of your client."

Again, the uncommunicative Duffy did not respond to counsel for the Rosenthals. And the uncontradicted evidence is that Duffy did not communicate to Garner about the existence of the action filed by the Rosenthals.

In 1978 the Rosenthals effected service upon Garner by publication and in 1979 obtained a judgment after default. Some 21 months later, in 1981, upon then learning (not from Duffy) of the Rosenthal litigation, Garner (represented by Duffy) made a motion to set aside the default and default judgment. ▇ The order denying that motion gives rise to this appeal and is an appealable order. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 94, pp. 4100-4101, and authorities cited therein.)

Section 473.5 of the Code of Civil Procedure provides in part that "[w]hen service of a summons has not resulted in actual notice to a party in time to defend the action and a default or default judgment has been entered against him . . .," he may move to set it aside if he acts within two years after entry of the default judgment and shows that his ". . . lack of actual notice in time to defend the action was not caused by his avoidance of service or inexcusable neglect."

■ Respondents contend that sending a copy of the summons and complaint to Attorney Duffy, though not constituting personal service upon Garner, provided her with "actual notice" within the meaning of Code of Civil Procedure section 473.5; and, further, that Duffy's failure to advise his client of the litigation against her was inexcusable neglect which is imputed to her. We do not accept these contentions of respondents and hold that the trial court abused its discretion in denying the motion to set aside the default judgment.

First, we construe the statute to mean what it says when it refers to *actual* notice. Second, we reject the notion that there is an identity of attorney and client so as to invariably impute to a client the attorney's inaction concerning his notice of new litigation to which the client is an unknowing party defendant.

Although Code of Civil Procedure section 473.5 refers to "actual notice," respondents assert that Civil Code section 2332[1] constructive notice is sufficient to vitiate a motion to set aside a default judgment. But Civil Code section 18[2] distinguishes actual notice from constructive notice by their very definitions. (Cf. *Witherow* v. *United American Ins. Co.* (1929) 101 Cal.App. 334, 339-340 [281 P. 668].) And it has been held ". . . that section 2332 of the Civil Code should not be applied to meet the requirement of actual knowledge." (*Ismay* v. *Tyler* (1959) 169 Cal.App.2d Supp. 883, at p. 885 [337 P.2d 257].)

To read "actual notice" as imputed notice would stand Civil Code section 18 on its head. We hold that the reference in Code of Civil Procedure section 473.5 to "actual notice" means genuine knowledge of the party litigant and does not contemplate notice imputed to a principal from an attorney's actual notice. We likewise reject as wholly illogical respondents' argument that the letter to Duffy of November 5, 1976, threatening a possible *future* lawsuit was "actual notice" to Garner (or Duffy) of litigation to be defended within the meaning of Code of Civil Procedure section 473.5.

An attorney ". . . will usually be the agent of his client *in transactions in which he acts for him.*" (1 Witkin, Cal. Procedure (2d ed. 1970) Attorneys,

---

[1] "As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other."

[2] "Notice is: 1. Actual—which consists in express information of a fact; or,
"2. Constructive—which is imputed by law."

§ 24, pp. 33-34, and authorities cited therein. Italics added.) Thus the doctrine of imputed notice is usually invoked by the attorney-client relationship. "To be imputable, the knowledge or notice must ordinarily be acquired by the agent *after* the creation of the agency, for until he becomes an agent he is under no obligation to communicate any information to the principal, and the presumption that he will do so fails. But knowledge acquired prior to the employment or in prior transactions may be imputed, if it is shown that, because of the close connection of the transactions, such knowledge was present in the mind of the agent at the time he acted for the principal. [Citations.]" (1 Witkin, Summary of Cal. Law (8th ed. 1973) Agency and Employment, § 143, p. 746.)

The doctrine of imputation of the attorney's knowledge to his client has its exceptions. (*Redman* v. *Walters* (1979) 88 Cal.App.3d 448 [152 Cal.Rptr. 42].) And we discern a certain distance, rather than a "close connection," between Duffy's prior representation of Garner and the subsequent filing of this action against Garner. In the earlier case Garner was plaintiff, while in this action she is the defendant. (Cf. *Hale* v. *Depaoli* (1948) 33 Cal.2d 228 [201 P.2d 1, 13 A.L.R.2d 183].) The record does not disclose any legal services rendered by Duffy for Garner between October of 1976 and July of 1981 when Garner states, without contradiction, that she first learned of the instant lawsuit and asked Duffy to make application to set aside the default judgment. For all that appears there was no attorney-client relationship between Duffy and Garner after cancellation of the sheriff's sale nor at the time of Duffy's receipt of the copies of the summons and complaint. Rather than speculate that Duffy continued as attorney for Garner as to her legal matter or matters, one in the position of the Rosenthals or their counsel might as well have assumed that the improvident levy created friction between Duffy and Garner with the result of Duffy's discharge; or one might have hypothesized that Duffy would act adversely to his client and (uncommunicative as always) would decline to inform Garner of this litigation against her because of professional embarrassment by the turn of events after he had sought to levy upon property owned by innocent third parties. (Cf. *People* v. *Park* (1978) 87 Cal.App.3d 550, 556 [151 Cal.Rptr. 146], and cases cited thereat for the proposition that there is no imputation when the agent is acting adversely to the principal.)

Respondents' citation to *Rauer* v. *Hertweck* (1917) 175 Cal. 278 [165 P. 946] is inapposite because, unlike the case at bench, in *Rauer* (1) the attorney who had notice of a judgment was attorney of record for the judgment debtor to whom notice was imputed and (2) the issue of actual notice was not addressed.

■ The applicable law regarding imputation to Garner of Duffy's inaction is set forth by our Supreme Court in *Carroll* v. *Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, at page 898 [187 Cal.Rptr. 592, 654 P.2d 775]: "In

general, a party who seeks relief under section 473 on the basis of mistake or inadvertence of counsel must demonstrate that such mistake, inadvertence, or general neglect was excusable 'because the negligence of the attorney . . . is imputed to his client and may not be offered by the latter as a basis for relief.' (*Buckert* v. *Briggs* (1971) 15 Cal.App.3d 296, 301 [93 Cal.Rptr. 61].) The client's redress for inexcusable neglect by counsel is, of course, an action for malpractice. (*Martin* v. *Cook* (1977) 68 Cal.App.3d 799, 809 [137 Cal.Rptr. 434]; *Orange Empire Nat. Bank* v. *Kirk* (1968) 259 Cal.App.2d 347, 353 [66 Cal.Rptr. 240].) [Fn. omitted.]

"However, an exception to this general rule has developed. '[E]xcepted from the rule are those instances where the attorney's neglect is of that extreme degree amounting to *positive misconduct*, and the person seeking relief is relatively free from negligence. [Citations omitted.] The exception is premised upon the concept the attorney's conduct, in effect, *obliterates the existence of the attorney-client relationship*, and for this reason his negligence should not be imputed to the client.' (Italics added.) (*Buckert* v. *Briggs, supra,* at p. 301; see also, *Orange Empire Nat. Bank* v. *Kirk, supra,* at p. 353; *Daley* v. *County of Butte* (1964) 227 Cal.App.2d 380, 391 [38 Cal.Rptr. 693].) Courts applying that exception have emphasized that '[a]n attorney's authority to bind his client does not permit him to impair or destroy the client's cause of action or defense.' (*Orange Empire Nat. Bank, supra,* 259 Cal.App.2d at p. 353; *Daley* v. *County of Butte, supra,* 227 Cal.App.2d at p. 391.)"

In the case sub judice, we find no factual support for the respondents' position that Duffy was acting for Garner at the time Duffy received copies of the complaint and summons. Since Garner did not then know of the litigation she had not employed Duffy to represent her as to this case and he, of course, was not attorney of record. Although the instant litigation arose out of a prior lawsuit in which Duffy did represent Garner, there is no compelling reason to assume that Garner would again employ Duffy with respect to this case. Even if Duffy did continue to represent Garner after cancellation of the sheriff's sale, in the case at bench his ". . . conduct, simulating rejection of the attorney-client relationship without knowledge of the plaintiffs . . . [and] . . . the attorney's failure to advise plaintiffs . . . constituted positive misconduct . . . [so that] failure to . . . [defend] was the product of extrinsic surprise and mistake without negligence on [plaintiff's] part." (*Buckert* v. *Briggs, supra,* 15 Cal.App.3d at pp. 301-302.) With respect to this litigation brought by the Rosenthals, during the time before Duffy moved to vacate the default judgment there was a ". . . total failure on the part of counsel to represent the client." (*Carroll* v. *Abbott Laboratories, Inc., supra,* 32 Cal.3d at p. 900.) Under such circumstances, not only is notice to Duffy not to be imputed to Garner but neither is the asserted inexcusable neglect of Duffy in failing to communicate with Garner about the filing of this litigation. (*Daley* v. *Butte, supra,* 227

Cal.App.2d 380.) Here, the proof establishes ". . . the kind of de facto severance of the attorney-client relationship which is necessary to bring the *Daley* doctrine into play . . . ." (*Carroll* v. *Abbott Laboratories, Inc., supra,* 32 Cal.3d at p. 901.)

■ Although respondents argue that Garner has failed to establish the existence of a meritorious defense were the case to be tried, we observe that a proposed verified answer accompanied the motion to vacate the default judgment. Such answer contains denials as to each of respondents' causes of action and an affirmative defense as well. The case cited by respondents (*Guardianship of Stanfield* (1939) 32 Cal.App.2d 283 [89 P.2d 696]) held that a verified answer was a sufficient showing of merits to justify relief from default. We are in accord, as is other precedent (e.g., *Brockman* v. *Wagenbach* (1957) 152 Cal. App.2d 603, 612 [313 P.2d 659]).

Of course the trial court's broad discretion to deny relief from default ". . . cannot be disturbed except for manifest abuse." (5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment in Trial Court, § 162, p. 3735, and cases cited therein.) But as stated in *Frank E. Beckett Co.* v. *Bobbitt* (1960) 180 Cal. App.2d Supp. 921, at pages 927-928 [4 Cal.Rptr. 833]: "In a case of this character . . . [however, it is] . . . a 'legal discretion, not an arbitrary one.' *Riskin* v. *Towers,* 24 Cal.2d 274, 279. . . . 'It is also well established that it is the policy of the law to bring about a trial on the merits whenever possible, so that any doubts which may exist should be resolved in favor of the application, to the end of securing to a litigant his day in court and a trial upon the merits'. . . . 'Even in a case where the showing under section 473 is not strong, or where there is any doubt as to setting aside of a default, such doubt should be resolved *in favor of the application.*' "

Applying the foregoing principles, we resolve any doubt in favor of Garner who apparently acted to request relief from default as soon as she actually learned of this litigation and within the two-year period specified by Code of Civil Procedure section 473.5. Respondents' assertion of prejudice because ". . . it would be virtually impossible . . . to reconstruct their case at this time" is without any factual basis whatsoever in the record, and we hence disregard such conjecture.

■ Moreover, we detect no reason to accede to respondents' request to impose upon Garner as a condition of granting relief from default the payment of a sum sufficient ". . . to compensate them for the attorneys' fees and delays and difficulty in having to prove their case should the matter proceed once again on the merits." If criticism might be addressed to Duffy for his failure to communicate, Garner herself has not been shown to be responsible for any intrigue, delay or obstruction in these judicial processes. We are of the view that she

should not be subjected to imposition of conditions which impair the substantial right of her day in court. (*Thompson* v. *Sutton* (1942) 50 Cal.App.2d 272 [122 P.2d 975].)

The order is reversed with directions to set aside the default judgment and allow appellant to defend the action.

Thompson, J., and Johnson, J., concurred.