[Civ. No. 4940. Fourth Dist. Mar. 24, 1955.]

ROBERT O. HARPER, Respondent, v. LOUSANDER MARKARIAN et al., Appellants.

772

Iener W. Nielsen, Mikio Uchiyama and Harold V. Thompson for Appellants.

Ralph Robinson for Respondent.

GRIFFIN, J.—Plaintiff and respondent, a small mill work contractor, brought this action against defendants and appellants in two causes of action. One was for damages predicated upon an alleged breach of contract by defendants in the construction and delivery of mill work to plaintiff to be installed by defendants' carpenters in a home being built by defendants on their property. The second cause of action is upon *quantum meruit* for services and material furnished them in the sum of $3,722.21. Defendants filed a cross-complaint seeking damages for $775. The court awarded judgment to plaintiff for $1,950, and denied judgment to defendants on their cross-complaint. It is not indicated therein whether the judgment for plaintiff was based upon the first or second cause of action.

The findings were that there was a written agreement entered into on August 19, 1952, between the parties whereby plaintiff, as party of the second part, agreed to build and deliver mill work in accordance with certain plans and specifications; that plaintiff entered into the performance of the agreement and performed according to its provisions until March 1, 1953, when defendants wrongfully and without right, terminated it and refused to permit plaintiff to continue to perform; that plaintiff performed his part, save and except such performance as was prohibited by the actions of defendants; that plaintiff demanded payment, which was refused by defendants; that plaintiff rendered services and furnished material to defendants at their special instance and that there remains $1,950 due thereon.

The court further found that about March 19, 1953, plaintiff entered into a supplemental written agreement, upon which defendants relied as a basis for their claim that plaintiff breached that supplemental agreement and the original agreement, and that plaintiff was therefore not entitled to recover under either cause of action. As to this supplemental agreement, the court held that there was "no consideration delivered or paid" to plaintiff for its execution. No specific finding is made as to whether plaintiff or defendants breached this supplemental agreement pleaded by defendants in their answer and cross-complaint.

The original agreement also provided that defendants had advanced $500 to plaintiff on said contract. At the time of its execution defendants exacted a chattel mortgage of $500 on plaintiff's tools, etc., as security for "faithful performance of certain specific work" under the agreement mentioned, and "for the repayment of sums that may be advanced" up to $2,000.

The contract price was $5,672.21, and was to be satisfied by defendants paying all bills up to that amount for materials and labor furnished, as said bills accrued during the progress of the work, the payments to be made directly to plaintiff upon receipt by defendants from plaintiff of itemized bills. It was then agreed that defendants had employed certain contractors, subcontractors and other workmen in the construction of the home, and that plaintiff agreed to perform the mill work in such a manner as not to hinder or delay the other workmen, but if such delay occurred plaintiff agreed to pay defendants $25 per day for each day of such delay; that in the event of plaintiff's "ceasing work on said house for a period of three days, or not diligently prosecuted," defendants "may enter and cause said work to be completed," and any excess over $5,672.21 in cost to be repaid by plaintiff. Time is made the essence of the contract.

It appears that certain delays were occasioned in the work and in making payments under that agreement. Accordingly, a supplemental agreement was executed. Therein, a definite prescribed time limit was set for each installation of the mill work. They further agreed that time was the essence thereof; that should plaintiff fail to deliver and complete any such particular installation on the hour and date indicated, plaintiff would be considered in violation of the supplemental agreement, as well as the original agreement, and defendants could terminate them; that all penalties therein set forth

were to be in full force and effect; and that defendants were then to have the right to obtain the services of some other person of their choice to complete the work with "no further payment to" plaintiff than that advanced and made to plaintiff. It then provided that defendants "shall pay to plaintiff an additional consideration of $100" for the completion of all mill work, as contemplated, within the time limit prescribed to be paid on or before April 9, 1953.

Defendants' claims on this appeal are: (1) That the finding that there was no consideration for the supplemental agreement is not supported by the evidence. (2) That the findings are inconsistent and irreconcilably contradictory. (3) That the amount awarded is excessive.

As to the first claim, it appears from the written opinion on file that the trial judge, apparently, premised his belief that there was no consideration for the supplemental agreement upon the theory that no consideration was, at the time, "paid by the defendants" but was made subject to the conditions of fulfillment of the agreement by plaintiff within the time prescribed. It appears to us that this is a false premise. Had the plaintiff performed according to the agreement, he would have a cause of action against defendants for the $100 excess agreed upon. This consideration, with the other obligations assumed by defendants, would be sufficient to support the supplemental contract. (Civ. Code, §§ 1609, 1610, 1614, and 1615; *Vickrey* v. *Maier,* 164 Cal. 384 [129 P. 273].)

As to the second claim the court did, in one finding pertaining to the first cause of action, state that *defendants* had breached their original contract of August 19, 1952, with plaintiff, and that *plaintiff* had fully performed the contract, except as prevented from performing by defendants' acts in violation of the agreement. Apparently no judgment for damages was rendered under that claimed breach. No similar finding was made as to the supplemental agreement. The court then found that plaintiff was entitled to $1,950 by reason of work and materials furnished. Apparently this was under the second cause of action. It is contended by defendants that if plaintiff's judgment is to stand upon the basis of breach of the contract by defendants, his damages are measured upon an entirely different theory than if the money is recoverable under the theory of *quantum meruit,* citing section 3300, Civ. Code; *O'Connell* v. *Main & Tenth Streets Hotel Co.,* 90 Cal. 515 [27 P. 373]; and *Lacy Mfg. Co.* v. *Los Angeles Gas & Elec. Co.,* 12 Cal.App. 37 [106 P. 413].

It is further contended that it is impossible to reconcile the contract and findings, citing *Fanta* v. *Maddex,* 80 Cal.App. 513 [252 P. 630]; and *Learned* v. *Castle,* 78 Cal. 454 [18 P. 872, 21 P. 11]. There appears to be some merit to this contention. Counsel for plaintiff, in effect, concedes that the findings are as stated, but contends that they are not contradictory. He argues that although the court found a breach of the contract by defendants, no judgment was awarded on this basis; that there was a clear finding that material and services were furnished; that the judgment was rendered against defendants upon the theory of *quantum meruit*; that accordingly, the finding that defendants breached the original contract and plaintiff did not, is "more or less surplusage" and may be disregarded; and that this court on appeal may strike it and affirm the judgment, citing *Wallace Ranch Water Co.* v. *Foothill Ditch Co.,* 5 Cal.2d 103, 118 [53 P.2d 929]. It is further argued that slight or inadvertent contradictions on formal or immaterial matters will not be fatal; that findings should be liberally construed in support of the judgment; and that inconsistencies are immaterial where the evidence would support the judgment on either theory, citing *Haight* v. *Haight,* 151 Cal. 90, 92 [90 P. 197]; and *Martinez* v. *Martinez,* 41 Cal.2d 704 [263 P.2d 617].

A close question arises as to whether plaintiff has brought himself within these rules. The evidence as to the breach of the original and supplemental contracts by both plaintiff and defendants is in sharp conflict. In reference to the delivery, according to the schedule, of the materials indicated in the contract, and the making of timely payments therefor by defendants, the excuses for nondelivery of the mill work were that defendants' contractors were not ready for delivery when it was ready and plaintiff was compelled to store it in his garage and workshop; that defendants' contractors installed the fireplace out of line and it had to be done over in certain respects before the mill work was installed; that defendants changed the plans as to certain fixtures after the contract was signed; that defendants' workmen were found to be incapable of installing the cabinet work and a delay was occasioned by defendants in seeking other carpenters; that certain mahogany wood was not obtainable by plaintiff and delay was occasioned thereby; and that defendants' attorney authorized delay in delivery of such mill work, and authorized plaintiff to work on other articles where the wood was obtainable. It appears from plaintiff's testimony that although

considerable mill work was completed and stored by plaintiff, defendants refused to accept delivery of it and refused to make payments upon it at that time because they insisted that their carpenters install it before they would accept it, which was not a part of the agreement; that plaintiff demanded payment for fixtures already delivered on many occasions but defendants refused payment and as a result plaintiff was obliged to purchase articles at defendants' furniture store and reimburse his help with such merchandise; that when plaintiff was notified that the agreement was terminated he had considerable material on hand which he had ordered for this particular job.

It is defendants' testimony that payments were made on all fixtures delivered up to the time of the service of notice of breach of the contract; that it became necessary to invoke the provisions of the agreement to engage other means to have the mill work finished; that their carpenters were laid off for over one month because of delay in delivery of the mill work; that plaintiff failed in all particulars in reference to delivery of mill work, as provided in the supplemental agreement; and that accordingly by the terms of the agreement defendants were authorized to pursue the course they did in engaging others to do the work. Defendants also contend that plaintiff never furnished them itemized statements of labor and materials furnished by him, and accordingly there was no obligation on their part to make payments. It is plaintiff's argument that defendants waived this right because they made payments on the contract without the formality of the presentation of an itemized bill. There is no direct finding as to the truth of these statements in respect to the claimed breach of the supplemental agreement.

However, in the memorandum opinion filed by the trial judge he noted the fact that a mortgage was exacted of plaintiff in the amount referred to but made no disposition of this item in the findings. Whether or not the mortgage is still effective is not determined. He noted that the original contract did not specify a particular day or date upon which the work or any part thereof should be completed. He noted that one clause provided a penalty of $25 per day for delay caused by plaintiff to the contractors which must be paid by plaintiff, and the right of defendants to enter upon the premises and cause the work to be completed by third parties at the expense of plaintiff if work ceased on the dwelling house for a period of three days. The court remarked that

the evidence disclosed that plaintiff was not equipped to process a contract of this size in the first instance with the same regularity that could be expected of a larger mill; that he was underfinanced and could not perform unless periodic payments were promptly made to meet the current payroll and bills; and that all of this was known to the defendants; that the work of the plaintiff was held up by reason of the fact that the house was not in a condition to receive the mill work; and that demands for payment were objected to by defendants for one reason or another, and in some instances because itemized statements had not been furnished as required by the agreement. He also stated that one substantial payment was made to a planing mill because plaintiff's credit was not good and defendants agreed to pay for this material on account; that the arrangement under the original agreement was unsatisfactory to both parties and a controversy arose as to the cause of the delay and the supplemental agreement was prepared by defendants' attorney, which the court found had no consideration because it "was not paid by the defendants." Then follows a general citation of authorities regarding the fact that the courts do not ordinarily favor forfeitures; and that before one can prove a forfeiture he must clearly prove that he himself is without fault. He concluded that in the instant case he was justified in seizing upon any reasonable grounds to either prevent the exercise of the forfeiture or to relieve it; that defendants themselves were in default and were in no position to take advantage of the forfeiture clause; that plaintiff is "therefore, entitled under the *quantum meruit* action to recover the reasonable value of the work performed and the court is entitled to take the written contract as the evidence of the value of that work"; that the figure lies somewhere between $1,587.09 and $2,209.30; and accordingly he believed that the amount had been reasonably established at $1,950. How the trial court arrived at these figures is not readily ascertainable.

From an examination of the pleadings, the written memorandum of the court, the findings made, and judgment entered, it becomes apparent that the trial court never intended to base the judgment upon a cause of action for damages for breach of the contract, although conflicting evidence, interpreted most favorably toward plaintiff, might have justified the judgment. A charitable construction of the findings would be that the court believed, and the evidence strongly indicates,

that both parties breached the original, as well as the supplemental agreement, and upon this theory, the court rendered judgment upon the second cause of action. ■ Findings are to be read and considered together, and, if possible, are to be reconciled so as to prevent any conflict on material points. ■ Unless the conflict is clear and the findings incapable of being harmoniously construed, a judgment will not be reversed on the ground of a conflict in the findings. (*Haight* v. *Haight*, 151 Cal. 90 [90 P. 197].)

Assuming, therefore, that there is a sufficient finding to support the second cause of action, there still arises the question whether the proper measure of recovery was applied and whether the evidence, in this respect, supports the judgment. All of the findings made in the instant case are in favor of the plaintiff. There is a line of cases holding that where a judgment is obtained upon one of two theories stated in separate causes of action, and the evidence would support a recovery on either theory, the finding on one particular inconsistent theory may be disregarded. (*Martinez* v. *Martinez, supra*; *Epstein* v. *Gradowitz*, 76 Cal.App. 29 [243 P. 877]; *Baird* v. *Ocequeda*, 8 Cal.2d 700 [67 P.2d 1055]; *Nunneley* v. *Edgar Hotel*, 36 Cal.2d 493, 500 [225 P.2d 497]; *Wells* v. *Brown*, 97 Cal.App.2d 361 [217 P.2d 995]; *Singleton* v. *Fuller*, 118 Cal.App.2d 733 [259 P.2d 687].)

Apparently, in fixing the reasonable value of the work performed and material furnished the trial court, as a basis for the judgment, has used the contract price of $5,672.21 as the reasonable value of the entire services to be performed and of the cost of materials furnished. Defendants admittedly paid $2,459.59 on the contract price, by check advancements or by merchandise. One hundred dollars of this sum was for the payment of a cupola installed by plaintiff, for which provision was not made in the written agreement. The amount of the judgment, $1,950, plus $2,359.59, the amount paid on the contract, would equal $4,309.59, which would indicate that there was approximately $1,362.62 of the work remaining undone when the original and supplemental contracts were cancelled. Plaintiff testified that about $1,500 to $1,600 was the fair market value of the work yet to be performed by him and of the material to be furnished.

Defendants claim this figure is excessive because, by subsequent bid of another contractor, they were compelled to pay an additional $3,050 to complete the work according to the plans and specifications, and that amount was the fair and

reasonable value of such cost. This figure is not necessarily binding on the trial court and would not be conclusive because the evidence shows that the same contractor formally entered a competitive bid with plaintiff for the entire job for $7,000, which he testified was a reasonable figure for such service. Plaintiff testified that he consulted with this contractor after the cancellation of the contract and asked him how much he was charging to finish the job for defendants, and that contractor told him he did not want the job but he "hiked" the price up a thousand dollars and defendants, nevertheless, accepted the bid. The contractor denied such a conversation. There is evidence that plaintiff had considerable stock on hand which he had ordered for this particular job and defendants did not use, and that it had no resale value. There was no testimony as to the actual value or cost of the material. The evidence on the entire subject matter is not too clear and is highly conflicting. Apparently the trial court was confronted with some difficulty in establishing the value of the services performed and yet to be performed and the value of the material ordered for defendants' use and not used by them. The trial court had all the facts and figures before it and was entitled to weigh the testimony in relation to the results obtained. It cannot be said that the amount found due is excessive as a matter of law, or that it does not have some evidentiary support. This court, on appeal, is bound by certain fundamental rules. ▪ It is a cardinal doctrine often enunciated that where, upon a question of fact, the testimony in the court below involves a substantial conflict, the action of the trial court will not be disturbed. ▪ It is to be presumed that the trial judge reconciled and accounted for, to his own satisfaction, any and all inconsistencies which might be made to appear in the testimony. ▪ Wherever there is a fair and reasonable amount of evidence to support the finding of a jury it will not be disturbed by the appellate court though, in its opinion, it is against the preponderance of the evidence. (10 Cal.Jur. 1172, § 383.) The judgment rendered has evidentiary support.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.