Filed 8/9/16

CERTIFIED FOR PARTIAL PUBLICATION[*]


# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO


| | |
|---|---|
| PULTE HOMES CORPORATION,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>WILLIAMS MECHANICAL, INC.,<br><br>    Defendant and Respondent. | E064710<br><br>(Super.Ct.No. PSC1300561)<br><br>OPINION |


APPEAL from the Superior Court of Riverside County. David M. Chapman,

Judge. Reversed and remanded with directions.

Graham & Associates and Bruce N. Graham for Plaintiff and Appellant.

Morrow & White, William D. Morrow; Geoffrey A. Kraemer and Jesse S. Abrams

for Defendant and Respondent.

Pulte Homes Corporation (Pulte) filed this action against Williams Mechanical,

Inc. (Williams) for defective performance of a plumbing subcontract. Even before the

---

[*]    Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts III and IV.C.1.

1

action was filed, however, Williams was defunct; first, it was suspended by the Secretary of State, and thereafter, it dissolved voluntarily.

Pulte served Williams by effecting service on an attorney whom Williams had designated as its agent for service of process. The attorney, however, did not notify Williams of the action; he also did not identify or notify Williams's liability insurer. Williams, of course, failed to respond to the complaint, and Pulte obtained a default judgment.

Pulte then notified Williams's liability insurer of the default judgment. About four and a half months later, the insurer retained counsel to represent Williams, and Williams's counsel filed a motion to set aside the default judgment. The trial court granted the motion.

Pulte appeals, contending:

1. Williams lacks the capacity to defend this action because it has been suspended.

2. Williams failed to establish that it was entitled to relief from the default and default judgment.

We will hold that the trial court abused its discretion by ruling that Williams was entitled to relief. Accordingly, we need not decide whether Williams had the capacity to defend.

I

FACTUAL BACKGROUND

The following facts are taken from the evidence submitted in connection with the motion to set aside.[1]

On February 16, 2011, Williams was suspended by the Secretary of State. On June 29, 2012, while Williams was still suspended,[2] its sole director filed a certificate of dissolution.

According to the records of the Secretary of State, Williams's agent for service of process was Matt H. Morris. Morris was an attorney. On November 25, 2013, Pulte served a summons and complaint on Morris by substituted service. Morris admitted that he received the summons and complaint, but he did not take any action in response because Williams was dissolved and because he had no information about Williams's liability insurance carrier(s).

Actually, Williams's liability insurer was First Specialty Insurance Corp. (First). On April 2, 2015, Pulte's attorney contacted First and notified it of the litigation. He provided a copy of the default judgment and a "cursory case summary." First's adjuster

---

[1]    Pulte contends the trial court should have sustained its objections to Williams's evidence. We need not decide this issue because ultimately, we conclude that, even assuming the evidence was admissible, the trial court erred.

[2]    According to a "Certificate of Status," issued by the Secretary of State: (1) as of September 15, 2015, Williams was dissolved, and (2) Williams's entire status history consisted of a suspension on February 16, 2011. We conclude that Williams was not relieved of the suspension before it dissolved.

3

asked him for "copies of all relevant documents including but not limited to contracts, payment records, pleadings, defect list, and evidence of damages." On April 3, 2015, and on "several" subsequent occasions, First's adjuster again requested documents "pertinent to [First]'s coverage investigation." On July 20, 2015, Pulte's attorney provided some, though not all, of the requested documents.

According to First's adjuster, between April 2 and July 20, 2015, she was "led to believe" that the underlying litigation involved only one home; on July 20, 2015, she realized for the first time that it involved "up to 26 homes."

On August 17, 2015, First retained counsel to represent Williams. On August 21, 2015, Williams's counsel filed the motion to set aside.

II

PROCEDURAL BACKGROUND

In 2013, Pulte filed this action against Williams. In it, Pulte seeks $69,576 based on Williams's allegedly negligent performance of a subcontract for the installation of plumbing in two residential construction projects.

Williams failed to file a timely response to the complaint. On January 7, 2014, the trial court entered Williams's default.[3] On March 10, 2015, it entered a default judgment against Williams.

---

**3** Pulte's request for entry of default was mailed to the correct street address but the wrong unit number. Morris testified that he did not remember receiving the request for entry of default. Williams, however, has never argued that it is entitled to relief on this ground.

On August 21, 2015, Williams filed a motion to set aside the default and the default judgment. The motion was brought under Code of Civil Procedure section 473, subdivision (b), on the ground that Williams's failure to respond to the complaint was due to its own mistake, inadvertence, surprise, or excusable neglect. Alternatively, the motion was also brought under Code of Civil Procedure section 473.5, on the ground that Williams had not received actual notice of the proceedings. Finally, the motion was also brought on the nonstatutory equitable ground of extrinsic mistake.

In its opposition, Pulte argued, among other things, that Williams was a suspended corporation and therefore lacked the capacity to file the motion.

In reply, Williams argued that it was actually a dissolved corporation, and therefore it had the capacity to file the motion under Corporations Code section 2010, subdivision (a), which, as relevant here, provides that a dissolved corporation "continues to exist for the purpose of winding up its affairs, [including] *prosecuting and defending actions by or against it . . . .*"

The trial court granted the motion. In its minute order, it stated: "Court finds current status is: [d]issolved [c]orporation." Thus, it set aside the default and the default judgment.

Acting on Pulte's supersedeas petition, which Williams did not oppose, we stayed the trial court proceedings for the duration of the appeal.

5

## III

## THE EFFECT OF WILLIAMS'S SUSPENSION AND DISSOLUTION

Pulte contends that Williams is barred from defending this action because it is a suspended corporation. We discuss this issue only to explain why we are not deciding it.

Subject to exceptions not applicable here, a suspended corporation cannot exercise any "corporate powers, rights and privileges." (Corp. Code, § 2205, subd. (c); Rev. & Tax. Code, §§ 23301, 23301.5.) Thus, it "cannot sue, defend, or appeal from an adverse decision. [Citations.]" (9 Witkin, Summary of Cal. Law (10th ed. 2005) Corporations, § 223, p. 993.)

On the other hand, a dissolved corporation "continues to exist for the purpose of winding up its affairs, *prosecuting and defending actions by or against it* and enabling it to collect and discharge obligations, dispose of and convey its property and collect and divide its assets, but not for the purpose of continuing business except so far as necessary for the winding up thereof." (Corp. Code, § 2010, subd. (a), italics added.)

Thus, the issue is: When a corporation has been first suspended and then dissolved, should it still be treated as a suspended corporation, so that it cannot defend an action? Or does Corporations Code section 2010, subdivision (a) restore to it the power of defending an action in the course of winding up?

As far as we can tell, this is a question of first impression. Pulte argues that *Boyle v. Lakeview Creamery Co.* (1937) 9 Cal.2d 16 is dispositive. We disagree. *Boyle* involved a corporation that had been suspended but not dissolved. (*Id*. at pp. 17-19.) The

Supreme Court merely held that the statutory predecessor of Corporations Code, section 2010, subdivision (a), regarding dissolved corporations, did not apply to it. (*Id*. at p. 20.) Thus, *Boyle* sheds no light on whether Corporations Code, section 2010, subdivision (a) applies to a corporation that has been both suspended and dissolved.

Williams, on the other hand, argues that the trial court found that it was a dissolved corporation, and that we must uphold this finding because it is supported by substantial evidence. However, there is no factual question as to whether Williams is a suspended corporation or is a dissolved corporation. The relevant facts are undisputed; it is both. Rather, there is a legal question as to whether it should be treated as a suspended corporation or as a dissolved corporation within the meaning of the applicable statutes.

This issue can be resolved only as a matter of statutory interpretation. When as here, "' . . . "the statutory language may reasonably be given more than one interpretation, ""'courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute.'"'" [Citation.]' [Citation.]" (*Fluor Corp. v. Superior Court* (2015) 61 Cal.4th 1175, 1198.) Unfortunately, the parties have not addressed any of these extrinsic aids.

The issue is complicated by the fact that a corporation can be suspended in two ways: It can be suspended by the Franchise Tax Board for failure to pay taxes or failure to file a tax return (Rev. & Tax. Code, §§ 23301, 23301.5), or it can be suspended by the Secretary of State for failure to file an annual statement of information. (Corp. Code,

7

§§ 1502, 2205.) There is some evidence that Williams was suspended for failure to file a statement of information.**4**

The parties have not mentioned Revenue and Taxation Code section 23561, although it has some bearing on the issue. It provides, as relevant here: "No decree of dissolution shall be made and entered by any court, *nor shall . . . the Secretary of State* file any such decree, or *file any other document by which the term of existence of any taxpayer shall be reduced or terminated*, . . . if the corporate powers, rights, and privileges of the corporation have been suspended or forfeited by the Franchise Tax Board for failure to pay the tax, penalties, or interest due under this part or Part 10.2 (commencing with Section 18401)." (Italics added.)

This appears to mean that, if a corporation is suspended for failure to pay taxes, it cannot dissolve, and therefore it cannot assert a right to defend under Corporations Code section 2010, subdivision (a). But if that is the case, did the Legislature mean that a corporation that is suspended for failure to file a statement of information *can* dissolve and *can* assert a right to defend? Or did the Legislature merely clarify existing law,

---

**4** Specifically: (1) According to a "Certificate of Status" issued by the Secretary of State, Williams's status was "SOS suspended." (Capitalization altered.) In other words, it had been suspended by the Secretary of State, not by the Franchise Tax Board. (2) In Williams's certificate of dissolution, its sole director stated, under penalty of perjury, that "[a] final franchise tax return . . . has been or will be filed . . . ." (3) Under Revenue and Taxation Code section 23561, as we will discuss in more detail anon, the Secretary of State is not supposed to file the certificate of dissolution of a corporation that has been suspended for nonpayment of taxes; however, the Secretary of State did file Williams's certificate of dissolution.

which would apply equally to a corporation that is suspended for failure to file a statement of information?

In sum, then, the issue, although interesting, is fraught with difficulty. We are reluctant to resolve the appeal on this ground if it can be resolved on relatively more settled grounds. And if we were to decide that Williams must be treated as a dissolved corporation, so that it still has the power of defending, we would have to reach those other grounds anyway.

We therefore turn to whether the trial court erred by ruling that Williams was entitled to relief. As will be seen, we can resolve the appeal on this ground alone.

IV

WILLIAMS'S RIGHT TO RELIEF

Pulte contends that Williams failed to establish that it was entitled to relief from the default and default judgment.

The trial court did not expressly rule that Williams had established a right to relief. It also did not specify whether it was granting relief under Code of Civil Procedure section 473, subdivision (b), under Code of Civil Procedure section 473.5, or under its equitable powers. However, "'[j]udgments and orders of the lower courts are presumed to be correct on appeal. [Citation.]' [Citation.] 'We imply all findings necessary to support the judgment, and our review is limited to whether there is substantial evidence in the record to support these implied findings. [Citations.]' [Citation.] Furthermore,

9

'[w]e will uphold the decision of the trial court if it is correct on any ground. [Citation.]' [Citation.]" (*Virtanen v. O'Connell* (2006) 140 Cal.App.4th 688, 709-710.)

A. *Relief under Code of Civil Procedure Section 473*.

Code of Civil Procedure section 473, subdivision (b), as relevant here, provides:

"The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect. Application for this relief . . . shall be made within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken."

Williams's motion was filed less than six months after entry of the default judgment, but more than six months after entry of its default. The trial court therefore could not set aside the default under Code of Civil Procedure section 473. And because it could not set aside the default, it also could not set aside the default judgment under Code of Civil Procedure section 473, because that would be "an idle act." (*Howard Greer Custom Originals v. Capritti* (1950) 35 Cal.2d 886, 888.) "' . . . If the judgment were vacated, it would be the duty of the court immediately to render another judgment of like effect, and the defendants, still being in default, could not be heard in opposition thereto. . . .' [Citations.]" (*Id.* at pp. 888-889; accord, *Weiss v. Blumencranc* (1976) 61 Cal.App.3d 536, 541; *Koski v. U-Haul Co.* (1963) 212 Cal.App.2d 640, 643.)

We therefore conclude that Williams was not entitled to relief under Code of Civil Procedure section 473.

B.    *Relief under Code of Civil Procedure Section 473.5.*

Code of Civil Procedure section 473.5, subdivision (a), as relevant here, provides:

"When service of a summons has not resulted in actual notice to a party in time to defend the action and a default or default judgment has been entered against him or her in the action, he or she may serve and file a notice of motion to set aside the default or default judgment and for leave to defend the action."

It is undisputed that Attorney Morris received actual notice. It is also undisputed that, when Williams dissolved, he was its agent for service of process. Williams argues, however, that service on an agent does not provide actual notice to the principal, citing *Rosenthal v. Garner* (1983) 142 Cal.App.3d 891.

In *Rosenthal*, the Rosenthals sued Garner and mailed the summons and complaint to Attorney Duffy. Previously, Duffy had represented Garner in related litigation. However, Duffy did not tell Garner about the Rosenthals' suit. The Rosenthals served Garner by publication and then obtained a default judgment against him. (*Rosenthal v. Garner*, *supra*, 142 Cal.App.3d at p. 894.)

The appellate court held that Garner was entitled to have the default set aside based on lack of actual notice. (*Rosenthal v. Garner*, *supra*, 142 Cal.App.3d at pp. 895-898.) In particular, it held that actual notice to Duffy was not actual notice to Garner. It stated: "[R]espondents assert that Civil Code section 2332 constructive notice is sufficient to vitiate a motion to set aside a default judgment. But Civil Code section 18 distinguishes actual notice from constructive notice by their very definitions. [Citation.]

11

And it has been held ' . . . that section 2332 of the Civil Code should not be applied to meet the requirement of actual knowledge.' [Citation.] [¶] To read 'actual notice' as imputed notice would stand Civil Code section 18 on its head. We hold that the reference in Code of Civil Procedure section 473.5 to 'actual notice' means genuine knowledge of the party litigant and does not contemplate notice imputed to a principal from an attorney's actual notice." (*Id*. at p. 895, fns. omitted.)

We may accept that imputed notice is not actual notice to an individual defendant; however, it can be actual notice to a corporate defendant. "[A] corporation, as an artificial entity created by law, can only act in its affairs through its natural person agents and representatives." (*CLD Const., Inc. v. City of San Ramon* (2004) 120 Cal.App.4th 1141, 1146.) Thus, a person cannot have actual notice through an agent, but a corporation can have actual notice *only* through an agent who has the appropriate authority.

Presumably notice to the board of directors or to the president of a corporation would be sufficient to constitute actual notice; indeed, in the case of a functioning corporation, it is arguable that it is necessary. (See Corp. Code, § 300, subd. (a) ["all corporate powers shall be exercised by or under the direction of the board"]; *Jeppi v. Brockman Holding Co.* (1949) 34 Cal.2d 11, 17 ["'The executive officer of a corporation is something more than an agent. He is the representative of the corporation itself.'"].) Here, however, Williams dissolved in 2012 and has been wound up; presumably it no longer has any directors, officers, agents or employees. At least under these

12

circumstances, we believe that notice to the person designated by the corporation as its agent for service of process *is* actual notice. An agent for service of process has the necessary authority because the corporation has expressly held that person out to the world as authorized to receive notice of actions. Indeed, in the case before us, if actual notice to Morris was not sufficient to make a default judgment stick, who else was there?

At oral argument, counsel for Williams suggested that, in the case of a defunct corporation, the entity entitled to actual notice is its insurance company. He relied on *Melendrez v. Superior Court* (2013) 215 Cal.App.4th 1343, which held that, when a dissolved corporation has been wound up, its attorney-client privilege is held, and can be waived, by its insurance companies. (*Id*. at pp. 1356-1357.) *Melendrez* reasoned that Evidence Code section 953, subdivision (d) provides that, when the client is a corporation "that is no longer in existence," the holder of the privilege is a "'successor, assign, trustee in dissolution, or any similar representative'" of the corporation. (*Melendrez*, *supra*, at p. 1356.) It held that "[t]his language is broad enough to encompass an insurer when the insurer's policy is the corporation's only remaining asset and the insurer is defending a claim asserted against the corporation that is covered under that policy." (*Id*. at p. 1356, fn. 18.) We lack any similar statutory authority to treat First as Williams's successor for purposes of "actual notice to a party" within the meaning of Code of Civil Procedure section 473.5, subdivision (a). The only doctrine we can think of that treats the insurer as the successor of its insured is subrogation, and that does not apply unless the insurer has

13

already paid a claim against the insured. (*AMCO Insurance Company v. All Solutions Insurance Agency, LLC* (2016) 244 Cal.App.4th 883, 895-896.)

We therefore conclude that Williams had actual notice of the action, and therefore it was not entitled to relief under Code of Civil Procedure section 473.5.

C. *Equitable Relief.*

"Apart from any statute, courts have the inherent authority to vacate a default and default judgment on equitable grounds such as extrinsic fraud or extrinsic mistake. [Citations.]" (*Bae v. T.D. Service Company* (2016) 245 Cal.App.4th 89, 97.)

"'One ground for equitable relief is extrinsic mistake — a term broadly applied when circumstances extrinsic to the litigation have unfairly cost a party a hearing on the merits.' [Citation.] But for a party to qualify for such equitable relief on this basis, courts have developed a three-part test: first, the defaulted party must demonstrate it has a meritorious case; second, it must articulate a satisfactory excuse for not presenting a defense to the original action; and third, the moving party must demonstrate diligence in seeking to set aside the default once it was discovered. [Citation.]" (*Lee v. An* (2008) 168 Cal.App.4th 558, 566.)

"Because of the strong public policy in favor of the finality of judgments, equitable relief from a default judgment or order is available only in exceptional circumstances. [Citation.]" (*County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1229-1230.)

14

"We review a challenge to the trial court's denial of a motion to vacate a default on equitable grounds for abuse of discretion. [Citation.]" (*Sakaguchi v. Sakaguchi* (2009) 173 Cal.App.4th 852, 862.)

       1.     *Forfeiture*.

Preliminarily, Williams argues that Pulte's opening brief failed to challenge equitable relief, and thus Pulte forfeited the issue. In its reply brief, Pulte implicitly concedes that its opening brief did not address equitable relief in so many words; however, it claims that it did argue that Williams had failed to prove two of the three factors — a satisfactory excuse and diligence — that would be relevant to equitable relief. Pulte also argues that Williams failed to prove the third factor — a meritorious case.

"""""""Obvious considerations of fairness in argument demand that the appellant present all of his points in the opening brief. To withhold a point until the closing brief would deprive the respondent of his opportunity to answer it or require the effort and delay of an additional brief by permission."""""" [Citation.]" (*Donorovich-Odonnell v. Harris* (2015) 241 Cal.App.4th 1118, 1141.)

We agree with Pulte, however, that its opening brief did address two of the three relevant factors. In connection with relief under Code of Civil Procedure section 473, it argued that Williams's failure to respond to the complaint was due to Attorney Morris's negligence and not to excusable mistake. In connection with relief under Code of Civil Procedure section 473.5, it argued that Williams did not "act diligently in filing the

15

motion" for relief. Williams had an opportunity to respond to these points, and did, in fact, respond to them. Williams does not claim that it would have argued them any differently if they had been raised under the rubric of equitable relief. Accordingly, it is in no way unfair for us to consider these two factors as they bear on the availability of equitable relief.

On the other hand, we agree with Williams that Pulte failed to raise the third factor in its opening brief. Although Pulte did argue in its reply brief that Williams had failed to show a meritorious defense, Williams was deprived of its right to respond. We therefore do not consider this third factor.

### 2. *A satisfactory excuse*.

"Extrinsic mistake exists when the ground for relief is not so much the fraud or other misconduct of one of the parties as it is the excusable neglect of the defaulting party to appear and present his claim or defense. [Citation.]" (*Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 503.) "Relief on the ground of extrinsic fraud or mistake is not available to a party if that party has been given notice of an action yet fails to appear, without having been prevented from participating in the action. [Citation.]" (*Ibid.*)

Statutory law allows an action against a dissolved corporation, although the plaintiff's recovery is limited to the corporation's "undistributed assets, including, without limitation, any insurance assets held by the corporation that may be available to satisfy claims." (Corp. Code, § 2011, subd. (a)(1)(A).) It also allows the plaintiff in an action against a dissolved corporation to serve the summons and complaint on "any agent

16

upon whom process might be served at the time of dissolution." (Corp. Code, § 2011, subd. (b).) If it is an extrinsic mistake for the corporation's erstwhile agent to ignore the summons and complaint simply because the corporation has been dissolved, then a judgment against a dissolved corporation would be subject to being set aside at almost any time, which would be inconsistent with these statutes.

In this case, Morris did not even try to notify anyone on behalf of Williams. Williams now claims that Morris "did not have any means of notifying anyone . . . ." However, there was no *evidence* of that. Morris testified that Williams was dissolved, but he did not testify that he did not know how to reach any of the former directors, officers, or employees of Williams; he also did not testify that he did not have access to Williams's books and records. Likewise, he testified that he did not have any information regarding Williams's insurance carriers, but he did not testify that he had no way of obtaining that information. Finally, as he was an attorney, and as he said that he did not know who Williams's insurance carriers were, obviously he knew that they had an interest in defending the action.

We need not decide whether Morris owed a *duty* to either Williams or First to make an effort to notify them. We recognize that he was no longer Williams's attorney. Also, it is at least arguable that Williams's dissolution terminated his authority to act as its agent for service of process. He had no past or present relationship whatsoever with First. (Certainly he was not likely to get paid for his efforts.) Still, in light of the statutory directive that a dissolved corporation may be served by serving its agent for

17

service of process at the time of dissolution, anybody who steps up to be a corporation's agent for service of process faces at least the possibility of being served on behalf of the corporation after it has dissolved. We therefore hold that a dissolved corporation cannot claim excusable neglect when its agent for service of process at the time of dissolution has not made any effort to notify it and has not shown that an effort, if made, would have failed.

Accordingly, we conclude that Williams did not show a satisfactory excuse.

### 3. *Diligence*.

Williams does not dispute that the diligence (or lack thereof) of First must be imputed to it. (See *Scognamillo v. Herrick* (2003) 106 Cal.App.4th 1139, 1149-1150 ["a blameless insured" can be denied relief from default based on "the inexcusable neglect of its insurer."].)

First became aware of the default judgment on April 2, 2015, at the latest. It responded by asking Pulte's counsel for "all relevant documents." With the possible exception of the pleadings, the specific documents that it requested — "contracts, payment records, . . . defect list, and evidence of damages" — related to the validity (or the amount) of Pulte's underlying claim; they did not relate to coverage or to the validity of the default judgment.

First claims it did not receive any documents until July 20, 2015, and even then it did not receive all the documents it had requested. This is not a sufficient excuse for its failure to file a motion for equitable relief in the interim.

18

The declaration of First's adjuster contains no plain statement that First failed to file a motion earlier *because* it had not yet received the documents. She described the documents that she requested as "pertinent" to a coverage investigation, but she did not state that First was unable to determine coverage without them. Pulte's counsel had already given her a summary of the case (albeit a "cursory" one). She also did not state that any of the documents that she eventually received resolved any previously murky coverage issue.

She did claim that, until she received the documents, she "was led to believe" that the underlying litigation involved only one home. However, she did not explain why it would matter whether the underlying litigation involved one home or 26 homes. Finally, even after she received the documents, she delayed another month before retaining counsel for Williams. She did not explain this additional delay.

We therefore conclude that Williams did not show diligence.

V

DISPOSITION

The order appealed from is reversed. The trial court is directed to reinstate the default and the default judgment. Pulte is awarded costs on appeal against Williams.

CERTIFIED FOR PARTIAL PUBLICATION

RAMIREZ
P. J.

We concur:

HOLLENHORST
J.

19