Filed 5/26/22  Ken Okuyama Design etc. v. R Motor Co. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

|  |  |
|---|---|
| KEN OKUYAMA DESIGN USA, INC., | B312936 |
| Plaintiff and Appellant, | Los Angeles County Super. Ct. No. 20GDCV00582 |
| v. | |
| R MOTOR COMPANY, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Curtis A. Kin, Judge.  Affirmed.

Law Offices of Robert W. Cohen, Robert W. Cohen and Mariko Taenaka for Plaintiff and Appellant.

Call & Jensen and Joshua Simon for Defendant and Respondent.

———————————

Plaintiff Ken Okuyama Design USA, Inc. appeals an order setting aside and vacating a default and default judgment entered against defendant R Motor Company. The evidence showed plaintiff served defendant's designated agent for service of process with the summons and complaint, but the designated agent apparently failed to forward the documents to defendant. Based on this evidence, the trial court determined defendant was not entitled to relief from default under Code of Civil Procedure section 473.5, subdivision (a) (section 473.5(a)), because service upon the designated agent constituted "actual notice" under the statute, but defendant was entitled to relief under Code of Civil Procedure section 473, subdivision (b) (section 473(b)), because defendant only "became aware" of the action after the default judgment was entered.[1] Plaintiff contends the "actual notice" finding cannot be logically reconciled with the finding that defendant was unaware of the lawsuit, and thus the court abused its discretion by granting relief under section 473(b). Plaintiff also argues the evidence was insufficient to establish defendant's default resulted from excusable neglect. Finding no abuse of discretion, we affirm.

---

[1]     Section 473.5(a) provides in relevant part: "When service of a summons has not resulted in actual notice to a party in time to defend the action and a default or default judgment has been entered against him or her in the action, he or she may serve and file a notice of motion to set aside the default or default judgment and for leave to defend the action."

Section 473(b) provides in relevant part: "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect."

## FACTS AND PROCEDURAL HISTORY

Plaintiff is an industrial design firm. It was an active California corporation in good standing when the alleged events underlying its lawsuit against defendant occurred.[2]

Defendant designs and builds "high-end electric automobiles." It is a Nevada company, registered to do business in California, with its principal office in Texas. Defendant's registration information with the Nevada Secretary of State lists CT Corporation System (CT) as its designated agent for service of process.

On July 17, 2020, plaintiff filed a complaint against defendant for breach of contract. The complaint alleges defendant failed to pay a series of invoices for design work performed in September 2016, totaling approximately $400,000.

On July 24, 2020, plaintiff personally served CT with the summons and complaint.

As of August 27, 2020, defendant had not responded to the complaint, and plaintiff filed a request for entry of default. The default was entered the same day. On September 28, 2020, plaintiff filed its prove-up papers and request for judgment. On September 29, 2020, the trial court entered the default judgment against defendant.

On February 5, 2021, defendant filed its motion to set aside the default, requesting relief under section 473.5(a) and section 473(b). In a supporting declaration, defendant's CEO, Dean Drako, declared that neither he nor anyone else at the company had received a copy of the summons and complaint.

---

[2]     In 2020, plaintiff's principal, who is primarily based in Japan, dissolved the corporation.

3

Drako said he received a demand letter from plaintiff's counsel in November 2017, claiming defendant owed plaintiff over $400,000 under the parties' contract. He responded the next day, asking counsel to identify the contract. According to Drako, plaintiff's counsel referred him to "some alleged invoices" that he "had never seen before," but counsel "never provided a contract," and Drako "never heard from [plaintiff's counsel] again." Thus, he "thought the matter was closed," until he "became aware of th[e] lawsuit . . . in late January [2021]," when he received a writ of execution.[3]

In a supplemental declaration, Drako acknowledged that, according to plaintiff's proof of service, plaintiff served CT with the summons and complaint on July 24, 2020, but he again denied that anyone at his company had received a copy of the documents. He explained that, "without my knowledge, [CT] had discontinued service to [defendant] several years ago . . . due to nonpayment for service." He said he was "unaware" of the nonpayment, which he said was "unintentional or the result of inadvertence."

Although CT "apparently discontinued service," Drako said "CT did forward a writ of execution to [defendant] in late January" and this was the "first time" he "became aware of this lawsuit." Once he learned of the writ of execution, Drako declared he "immediately engaged attorneys" to seek relief from the default. He said the default was the result of defendant's

---

[3]     Drako acknowledged that, in 2016, he authorized plaintiff's principal to perform design work for one of defendant's vehicles. He said defendant paid plaintiff's principal approximately $98,000 for the work, but defendant did not enter into "any other contract" for additional work.

4

"complete lack of notice of the lawsuit" and his "belief, based on [his] prior correspondence with [plaintiff's counsel], that any dispute had been resolved."

Plaintiff opposed the motion. It maintained personal service upon defendant's designated agent CT constituted actual notice "by operation of law," precluding relief from default under section 473.5(a). With respect to section 473(b), plaintiff argued the evidence proved CT "did in fact forward the summons and complaint to defendant the day it was served." As for Drako's assertion that defendant's failure to pay CT resulted from " 'inadvertence,' " plaintiff argued there was no evidence that "the neglect was excusable."

Plaintiff supported its opposition with documents CT produced in response to a business records subpoena. The records showed CT received "Initial" service from plaintiff on July 24, 2020. A "Service of Process Transmittal" record showed CT sent a package to defendant's office in West Lake Hills, Texas through United Parcel Services (UPS) the same day. According to a UPS delivery notification, UPS delivered the package to "WEST LAKE HILLS, TX" on July 28, 2020, and someone named "LOPEZ" signed for it.

CT's records also included email correspondence with defendant's counsel, dated February 2, 2021, explaining that, while "CT's service for [defendant] was discontinued several years ago due to nonpayment for service," CT had nonetheless "received and forwarded service a number of times recently," including on July 24, 2020.

Defendant responded to the CT records in its reply brief. Focusing on the July 24, 2020 Service of Process Transmittal, defendant argued the record did not show what CT actually

forwarded to defendant, as the " 'DOCUMENT(S) SERVED' " field had been left *blank*." As for the UPS delivery notification, defendant emphasized the record lacked a full delivery address and it said only that "LOPEZ" had signed for the package. In a supplemental declaration, Drako declared there had "never been an employee, officer, or other agent at [defendant] with the first or last name of Lopez."

The trial court granted defendant's motion, finding Drako's declarations were "sufficient to establish entitlement to relief from default" under section 473(b), even though defendant was not entitled to relief under section 473.5(a). Regarding the latter statute, the court determined plaintiff's personal service of the summons and complaint upon defendant's designated agent constituted "actual notice" and precluded relief under section 473.5(a). But the court found Drako's declaration nonetheless proved defendant had not become "aware of th[e] action [until] late January 2021, when CT forwarded a writ of execution to defendant, after which defendant promptly sought legal representation to address the default." In crediting the declaration, the court noted the Service of Process Transmittal record listed "no specific documents" under the " 'Document(s) Served' " field. And, although the UPS delivery notification said "LOPEZ" signed for the package, Drako had credibly declared that no one named Lopez had ever been an employee, officer, or agent at defendant. Because defendant "promptly filed [its motion to set aside the default] after receipt of the writ of execution," the court concluded it was entitled to relief under section 473(b).

# DISCUSSION

## 1. *Governing Law and Standard of Review*

Section 473(b) authorizes the court to set aside a default judgment upon a showing that the default resulted from mistake, inadvertence, surprise, or excusable neglect. (*Manson, Iver & York v. Black* (2009) 176 Cal.App.4th 36, 42; *Kooper v. King* (1961) 195 Cal.App.2d 621, 625–626 (*Kooper*); *Garcia v. Gallo* (1959) 176 Cal.App.2d 658, 665–666.) The motion for relief must be made within six months after entry of the default, and the party moving to set aside the default has the burden of showing good cause for relief. (*Manson,* at p. 42; *Marcotte v. Municipal Court* (1976) 64 Cal.App.3d 235, 239.)

We review an order setting aside a default judgment for an abuse of discretion. (*Kooper, supra,* 195 Cal.App.2d at p. 625.) "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478–479.) "In a matter in which an issue is tried on affidavits, the rule on appeal is that those affidavits favoring the contentions of the prevailing party establish not only the facts stated therein but also all facts which reasonably may be inferred therefrom. [Citation.] When there is a substantial conflict in the facts presented by affidavits, the determination of the controverted facts by the trial court will not be disturbed on appeal." (*Reed v. Williamson* (1960) 185 Cal.App.2d 244, 249 (*Reed*).)

"Reviewing courts have always looked with favor on orders excusing defaults and permitting controversies to be heard on

7

their merits.  Such orders are rarely reversed, and never unless it clearly appears that there has been a plain abuse of discretion.  [Citation.]  Even in a case where the showing under section 473 of the Code of Civil Procedure is not strong, or where there is any doubt as to the setting aside of a default, such doubt should be resolved in favor of the application.  [Citation.]  All presumptions will be indulged in favor of the correctness of the order, and the burden is on the appellant to show that the court's discretion was abused." (*Reed, supra,* 185 Cal.App.2d at pp. 248–249.)

**2.** ***The Trial Court Reasonably Exercised Its Discretion to Grant Relief from Default under Section 473(b)***

Plaintiff contends the trial court abused its discretion under section 473(b) in two ways.  First, because the court found plaintiff personally served defendant's designated agent CT with the summons and complaint, which the court determined constituted " 'actual notice' of the proceedings by operation of law" under section 473.5(a), plaintiff argues the court could not "simultaneously" find defendant " 'lack[ed] awareness' of the action" as the premise for granting relief under section 473(b).[4]

_____

[4]     In its opening brief, plaintiff argues, because "section 473.5 specifically dictates the result where a litigant claims not to have received notice despite good service, the trial court was wrong to turn to the more generalized inquiry of excusable neglect under section 473(b) to achieve a different result on the same alleged facts."  While this argument seems to contend relief from the default was unavailable under section 473(b) because the court denied relief under section 473.5(a), in its reply brief, plaintiff expressly disavows that position as "obviously wrong," acknowledging there are "any number of scenarios commanding relief under [section 473(b)] to litigants whose notice of the suit was unquestioned."  Rather, plaintiff clarifies its position is only

8

Second, plaintiff argues the evidence was insufficient to find excusable neglect caused defendant's default.  Neither argument establishes an abuse of discretion.

### a. *The trial court's factual findings are logically coherent and consistent with governing law*

In moving to set aside the default judgment, defendant advanced two independent theories for relief:  (1) defendant had not received "actual notice" of the proceeding in time to

---

that "relief under section 473(b) was unavailable to the defendant in *this* case because the finding of actual notice *is* inconsistent with the proposition that defendant 'lacked awareness' of the suit."  We therefore limit our review to this inconsistency argument.  In any event, as plaintiff correctly acknowledges, case law has long recognized a defendant may be entitled to relief from default under section 473(b), even when there is undisputed evidence that the defendant had actual notice of the proceeding. (See, e.g., *Pulte Homes Corp. v. Williams Mechanical, Inc.* (2016) 2 Cal.App.5th 267, 273–275 (*Pulte Homes*) [recognizing, although dissolved corporation was deemed to have "actual notice" under section 473.5(a) by virtue of service upon its agent for service of process, trial court had discretion to grant relief from default on equitable grounds and under section 473(b) upon a showing of extrinsic fraud or mistake]; *Gorman v. California Transit Co.* (1926) 199 Cal. 246, 247–249 (*Gorman*) [discussed *post*]; *Bernards v. Grey* (1950) 97 Cal.App.2d 679, 682–683, 686 [affirming order setting aside default on ground of excusable neglect where summons was served upon defendant in court, while he was talking to his attorney, who placed the papers in his brief case while unaware of their true nature]; *Kooper, supra,* 195 Cal.App.2d at pp. 624–627 [assessing whether defendant was entitled to relief from default under section 473(b) for excusable neglect where undisputed evidence showed defendant was personally served with the summons].)

defend the action, thus entitling it to relief from default under section 473.5(a); and (2) due to mistake, inadvertence, surprise, or excusable neglect, neither Drako nor any other employee of defendant was aware of the action until after the default, and once Drako learned of the action, he immediately moved to set aside the default, thus entitling defendant to relief under section 473(b). The trial court rejected the first theory, concluding personal service upon defendant's designated agent CT constituted "actual notice" of the proceeding and precluded relief under section 473.5(a). (See *Pulte Homes, supra,* 2 Cal.App.5th at pp. 273–274 [service upon dissolved corporation's agent constituted actual notice under section 473.5(a), explaining: " '[A] corporation, as an artificial entity created by law, can only act in its affairs through its natural person agents and representatives' "; thus, "a corporation can have actual notice *only* through an agent who has the appropriate authority."].)[5]

---

[5] Because resolution of the issue is not necessary to our disposition of this appeal, we make no judgment about whether the trial court correctly concluded that service upon a corporation's designated agent constitutes "actual notice" under section 473.5(a) in *all* cases. We note the *Pulte Homes* court expressly limited its holding to "dissolved" corporations, like the defendant in that case (*Pulte Homes, supra,* 2 Cal.App.5th at p. 274), while expressing doubt that imputed notice through an agent for service of process would constitute actual notice to an operating corporation, like defendant here: "Presumably notice to the board of directors or to the president of a corporation would be sufficient to constitute actual notice; indeed, *in the case of a functioning corporation, it is arguable that it is necessary*." (*Ibid.,* italics added, citing Corp. Code, § 300, subd. (a); *Jeppi v. Brockman Holding Co.* (1949) 34 Cal.2d 11, 17; see also *Rosenthal v. Garner* (1983) 142 Cal.App.3d 891, 895

["We hold that the reference in Code of Civil Procedure section 473.5 to 'actual notice' means genuine knowledge of the party litigant and does not contemplate notice imputed to a principal from an [agent's] actual notice."].)

To the extent the trial court and plaintiff relied upon *Cannon v. American Hydrocarbon Corp.* (1970) 4 Cal.App.3d 639 and *Koski v. U-Haul Co.* (1963) 212 Cal.App.2d 640 for the proposition that service upon a corporation's designated agent constitutes actual notice under section 473.5(a), we conclude that reliance was misplaced. Those authorities concern only whether service upon a corporation's designated agent may be deemed to be *personal service*—not whether such service gives *actual notice* to the corporate defendant. (See *Cannon,* at p. 652 [assessing whether service upon Secretary of State as provided under former Corp. Code, § 6408 constituted "personal service" under former Code Civ. Proc., § 473a]; *Koski,* at p. 643 ["[W]e must determine if the service here made upon defendant is personal service within the meaning of [former] Code of Civil Procedure section 473a."].) Indeed, the *Cannon* court made clear that it was not service upon the Secretary of State that constituted actual notice to the corporate defendant; rather, it was the fact that the Secretary of State followed the command of former Corporation Code section 6408 to "forward the copy of the process to the corporation at the designated address," which "*was done* with the result that the defendant had actual knowledge of the action against it in each instance." (*Cannon,* at p. 652, italics added.) Here, Drako's declaration and other evidence disputed plaintiff's contention that CT actually forwarded a copy of the process to defendant.

As for Code of Civil Procedure section 416.10, upon which the trial court and plaintiff also relied, the statute is irrelevant to the question of actual notice, because it simply identifies those persons to whom the summons and complaint may be delivered to effect *service* upon a corporation. By its terms, section 473.5(a) assumes there has been "service of a summons" in authorizing

11

Plaintiff contends this finding was logically inconsistent with the court's other finding that defendant " 'lack[ed] awareness' of the action" and thus precluded relief under section 473(b). We disagree.

When a judgment or order of the trial court is challenged on the ground that it is infected by inconsistent findings, "it is our duty to reconcile the conflicting findings, if possible, and give to them a meaning which will be consistent with the judgment." (*Denbo v. Senness* (1953) 120 Cal.App.2d 863, 868.) "Findings are to be read and considered together, and, if possible, are to be reconciled so as to prevent any conflict on material points. Unless the conflict is clear and the findings incapable of being harmoniously construed, a judgment will not be reversed on the ground of a conflict in the findings." (*Harper v. Markarian* (1955) 131 Cal.App.2d 771, 778.)

It is apparent from our examination of the trial court's minute order that, in finding a "lack of awareness," the court was referring to only defendant's officers and employees, who, according to Drako's declaration, had not received a copy of the summons and complaint. The court plainly regarded defendant's officers and employees, who had the duty and capacity to respond to plaintiff's complaint, as different and distinct from defendant's designated agent for service of process, which had the limited authority to accept service of the complaint and to forward it to those employees with the capacity to act upon it. Reading and considering the court's findings together, there is no conflict between, on the one hand, the finding that plaintiff personally served CT with the summons and complaint for purposes of

relief from default "[w]hen service of a summons *has not resulted in actual notice*." (Italics added.)

establishing defendant's actual notice under section 473.5(a) and, on the other hand, the finding that defendant's employees lacked awareness of the action for purposes of assessing whether defendant's default was the result of mistake, surprise, or excusable neglect under section 473(b).

Not only are the court's factual findings logically coherent, but they are also consistent with case law interpreting section 473(b).  Our Supreme Court's opinion in *Gorman* is instructive. The plaintiff in *Gorman* sued a transit corporation for damages caused in an accident involving one of the corporation's automobiles.  (*Gorman, supra,* 199 Cal. at p. 247.)  The summons and complaint were "served upon the secretary of said corporation," who delivered them to the manager of the corporation's traffic department, with the direction to deliver the documents "together with the file relating to the accident" to the corporation's president upon his return to the office.  (*Ibid.*) The manager placed the documents and file on his desk "to await the president's return," but before that occurred, another employee "inadvertently" took the package and "returned [it] to the compartment in which such files were ordinarily kept." (*Ibid.*)  Thus, as the *Gorman* court explained, the summons and complaint slipped the manager's mind, "with the result that the matter was not called to the attention of the president upon his return, nor in fact until some days after the default of the corporation had been taken and judgment thereon entered against it for the full sum sought by the plaintiffs in the action." (*Ibid.*)  The defendant corporation moved to set aside the default under former Code of Civil Procedure section 473 (a predecessor to section 473(b)) on the ground of excusable inadvertence or

neglect.  (*Gorman*, at p. 248.)  The trial court granted the motion and our Supreme Court affirmed.  (*Ibid.*)

The *Gorman* court found no abuse of discretion, concluding the evidence proved "the inadvertence or neglect in question was not the result of mere forgetfulness *on the part of the person or official charged with the duty of responding to the legal process in due time*, but that such inadvertence or neglect was based upon other circumstances which would suffice to render the same excusable."  (*Gorman, supra,* 199 Cal. at p. 248, italics added.) Distinguishing between the corporation's president, who had the duty to ensure the company's timely response to the legal process, and the corporation's secretary and manager, who were charged with transmitting the documents to the president, our high court reasoned the default was properly excused by the "intervening facts" surrounding the employees' "inadvertence and forgetfulness" in failing to transmit the documents.  (*Id.* at pp. 248–249.)  Because, due to that inadvertence, the president did not become aware of the action until after the default judgment was entered, the trial court reasonably exercised its discretion to set aside the default.  (*Ibid.*)

The reviewing court in *Pearson v. Continental Airlines* (1970) 11 Cal.App.3d 613 employed similar reasoning in affirming an order granting a corporate defendant's motion for relief from default on grounds of inadvertence, mistake, and excusable neglect under the predecessor to section 473(b). (*Pearson,* at pp. 615, 620.)  The evidence in *Pearson* showed an assistant secretary of the defendant corporation, who supervised the department that "initially handles any summons and complaints served on [the corporation]," after receiving service of the summons and complaint, gave the documents to a clerical

14

staff worker, who apparently failed to transmit the documents to the insurance department charged with filing a claim with the corporation's insurer to defend the lawsuit. (*Id.* at pp. 616–617.) After the default had been taken, the assistant secretary checked his files and found that, "while the summons and complaint had been filed, there was no evidence that a transmittal slip had been prepared [and] the insurance department had no indication that the pertinent papers had ever been forwarded to them." (*Id.* at p. 617.) Because it was "fairly inferable" from the assistant secretary's declaration that the clerical staff member made a mistake in failing to transmit the documents to the department charged with ensuring the corporation responded to the complaint, the *Pearson* court concluded there was "no clear abuse of discretion warranting appellate intervention." (*Id.* at pp. 618–620; see also *Benjamin v. Dalmo Mfg. Co.* (1948) 31 Cal.2d 523, 527 [finding excusable neglect in failing to respond to complaint where, although president received copies of summons and complaint, his secretary misunderstood his instruction to forward papers to company's attorney who was charged with responding to lawsuit].)

Like the reviewing courts in *Gorman* and *Pearson*, the trial court here reasonably distinguished CT, which was charged only with receiving service of process on behalf of defendant and forwarding it to the company's responsible employees, from those responsible employees who had the authority and capacity to ensure defendant responded to the complaint. In both *Gorman* and *Pearson*, the undisputed evidence established the defendant corporations had actual notice of the proceeding by virtue of service upon an employee designated by the corporation to receive legal process, but in each case the courts concluded

15

the default was excusable because a different employee with the duty to ensure the corporation responded to the complaint was not made aware of the proceeding until after the default was taken.  The evidence plainly established the same was true here.  The trial court reasonably found, on the one hand, that plaintiff personally served defendant's designated agent for service of process and, on the other, that defendant's officers and employees charged with responding to the complaint nevertheless lacked awareness of the action until after the default was taken.

**b.**     ***Substantial evidence establishes the default resulted from mistake, inadvertence, or excusable neglect***

Plaintiff contends "[t]he 'neglect' that the trial court excused in this case was [defendant's] failure to pay for CT Corporation's services, which the defendant's CEO surmised 'may' have led to defendant's lack of awareness of the action and its ultimate default."  Despite this purported finding, plaintiff argues there was no "true evidence for this supposed neglect" nor of its "connection to the default."  Rather, plaintiff maintains, Drako's declaration merely described " 'inadvertence in the abstract,' " with no explanation "about how or why *three years in a row* of CT invoices went unpaid" or "what, if anything, made the neglect excusable."  Moreover, plaintiff argues, "even if the failure to pay CT Corporation *had* been shown to be legally excusable," defendant failed to present "evidence of a causal connection between that neglect and [its] asserted ignorance of the lawsuit" to demonstrate "its default was 'taken . . . *through*' its excusable neglect as section 473(b) requires."  The record refutes plaintiff's contention.

The fundamental error in plaintiff's argument is it ignores an obvious implicit basis for the trial court's ruling—namely, that a mistake in CT's transmission of the summons and complaint to defendant's office caused those employees charged with responding on the company's behalf to neglect that duty, resulting in defendant's default. While it is true that the trial court's minute order addressed defendant's purportedly unexplained failure to pay CT, the order also focused on evidence of apparent problems with CT's transmittal of the summons and complaint. Critically, the court emphasized that CT's Service of Process Transmittal listed "no specific documents" under the " 'Document(s) Served' " field and that the related UPS delivery notification disclosed "someone named 'Lopez' signed" for the package, although "no one having the name of Lopez has ever been an employee, officer, or agent at defendant." This evidence, as highlighted in the court's order, was plainly sufficient to support a finding that defendant's default resulted from a mistake in CT's transmittal of the summons and complaint.

*Pearson* is again instructive. As discussed above, the reviewing court in *Pearson* affirmed an order setting aside a corporate defendant's default, concluding there was sufficient evidence that a clerical staff member made a mistake in failing to transmit the summons and complaint to the insurance department charged with ensuring the corporation responded. (*Pearson, supra,* 11 Cal.App.3d. at pp. 618–620.) Although there was "no declaration by the erring [clerical staff] member that she 'misunderstood' " the instruction to transmit the documents or that she otherwise "failed to follow customary procedures," the *Pearson* court nevertheless concluded "either or both of the circumstances seem[ed] fairly inferable" from evidence regarding

17

the customary procedures and the fact that the summons and complaint were not transmitted to the insurance department. (*Id.* at p. 618.) In reaching that conclusion, the reviewing court emphasized the following principles, which apply equally to our review of the evidence in this case: " '[Our] courts have repeatedly stated that it is the policy of our law to allow each contested cause to be tried on its merits. Code of Civil Procedure, section 473, is a legislative expression of this policy. Our courts will indulge all presumptions and resolve all doubts in favor of orders setting aside defaults. An order setting aside a default under the provisions of Code of Civil Procedure, section 473, will not be reversed unless the record clearly shows an abuse of discretion.' " (*Id.* at p. 619, quoting *Hodge Sheet Metal Products v. Palm Springs Riviera Hotel* (1961) 189 Cal.App.2d 653, 657.)

No clear abuse of discretion is shown here. It is undisputed that, as defendant's designated agent for service of process, CT was charged with accepting legal process on behalf of the company and transmitting it to those employees responsible for responding to that legal process on defendant's behalf. Drako's declaration proves this did not occur insofar as neither he nor anyone at defendant's office received a copy of the summons and complaint. Although there is no declaration from a representative of CT to explain why this happened, it is fairly inferable from either the blank on the Service of Process Transmittal sheet or the signature field on the UPS delivery notification, coupled with Drako's declaration, that some mistake beyond defendant's control was made in the transmittal process that prevented defendant's employees from receiving a copy of the complaint so they could timely respond to it. On this record, we cannot say it was unreasonable for the trial court to draw

18

the inference that defendant's default resulted from a mistake and excusable neglect.  (See *Pearson, supra,* 11 Cal.App.3d at pp. 618–619.)

## DISPOSITION

The order is affirmed.  Defendant R Motor Company is entitled to its costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

EDMON, P.J.

LAVIN, J.