Filed 7/26/23  Antich v. Capital Accounts CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| NELLY ANTICH, | B313167 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV18665) |
| v. | |
| CAPITAL ACCOUNTS, LLC, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Dennis J. Landin, Judge.  Affirmed.

Golden & Cardona-Loya, Cory M. Teed, for Plaintiff and Appellant.

Carlson & Messer, David J. Kaminski, Martin Schannong, for Defendant and Respondent.

_____

Pursuant to its inherent authority to vacate a default judgment on equitable grounds, the trial court granted a motion by defendant Capital Accounts LLC (Capital) to vacate a default judgment obtained against it by plaintiff Nelly Antich. Antich contends this was an abuse of discretion. We disagree and therefore affirm.

## BACKGROUND

Antich incurred a debt to a health care provider for medical services. In March 2016, the debt was placed with Capital, a Tennessee-based collection agency.

On May 29, 2019, Antich sued Capital in Los Angeles Superior Court for alleged violations of the Fair Debt Collection Practices Act, 15 United States Code section 1692, et seq. (FDCPA), which prohibits unlawful debt collection, and the California Consumer Credit Reporting Agencies Act, Civil Code section 1785.1 et seq. (CCRAA), which prohibits unlawful credit reporting.

Antich alleged that she informed Capital and provided documentation that the medical debt had been paid in full, and Capital confirmed that the balance was zero but nevertheless reported to credit agencies that the account had a past due balance of $1,520. Antich complained to both Capital and the credit agencies about this but Capital failed to conduct a reasonable investigation and furnished information to the agencies that it knew or should have known was inaccurate. Antich sought "statutory penalties of $120,000 pursuant to Civ. Code § 1785.31, subd. (a)(2)(B), which permits recovery of a penalty of up to $5,000 for each violation (24 months of reporting)."

Antich served Capital with the complaint in June 2019.

2

Capital failed to respond, and Antich obtained a default on August 16, 2019, and a default judgment on January 9, 2020.

A year later, on January 19, 2021, Capital filed a motion to set aside the default judgment on the grounds of extrinsic mistake.

In support of the motion, Gregory Nowicki, Capital's owner and principal, declared the Antich matter was ostensibly being handled by Jason Coleman, Capital's now-former in-house counsel, who worked for Capital from October 2015 to May 2020. However, unbeknownst to Capital, Coleman failed to handle the matter properly and by May 11, 2020, had effectively abandoned his employment with Capital and left the company without having reported any default issues regarding this or other lawsuits. His departure occurred during the early chaos of the Covid-19 pandemic, which crippled Capital's operations.

Nowicki declared that Coleman left Capital's legal affairs in disarray, with multiple defaults and other significant legal problems, including loss of a collection license. Capital engaged emergency legal counsel from Georgia to search for any pending legal matters. Emergency counsel explored the breadth of Coleman's nonfeasance and in June 2020 discovered the Antich default. Capital was unable to retain new in-house counsel until late September 2020, after which it retained a California attorney to handle the instant default.

Nowicki further declared that Capital maintained procedures to avoid credit reporting a debt that had already been paid. To ensure Capital did not actively report a zero-balance account to credit agencies, it had a procedure to delete the account once it learned the debt was paid or settled. Its credit reporting system screened out any account having a zero balance,

3

and any such account that had already been reported triggered Capital's system to send a "DA" (delete account) code to all consumer credit reporting agencies to ensure the account was deleted.

Coleman, Capital's former in-house counsel, declared he initially failed to calendar any response to the Antich default because Antich's counsel told him the parties to the debt were involved in settlement negotiations, but in any event he was "sick during [his] time at Capital," missed substantial time from work from May to August 2019 due to personal health issues and serious and stressful family matters, and was "overwhelmed with urgent family matters for months on end."

On March 9, 2021, the trial court granted Capital's motion to vacate the default judgment.

## DISCUSSION

Antich contends the trial court abused its discretion by granting Capital relief from the default judgment. We disagree.

### A. Background on the Trial Court's Power to Vacate Default Judgments and the Standard of Review

There are two means by which a trial court may grant relief from a default judgment. The first, under Code of Civil Procedure section 473, subdivision (b) (section 473), requires a party to apply "within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken." The time limit is jurisdictional, and after six months have passed, the court lacks power "to grant any relief, regardless of any question either as to the merits of the application, or as to whether or not the application was made within what might be held to be a reasonable time under the circumstances." (*Smith v. Pelton Water Wheel Co.* (1907) 151 Cal. 394, 397.)

4

Here, Capital filed its motion on January 19, 2021, more than a year after the default. Because Capital failed to meet the six-month deadline, relief was available only under the second, more burdensome method—by means of the court's "inherent authority to vacate a default and default judgment on equitable grounds such as extrinsic fraud or extrinsic mistake." (*Bae v. T.D. Service Co. of Arizona* (2016) 245 Cal.App.4th 89, 97.)

As our Supreme Court has explained, equitable relief from a default judgment "may be given only in exceptional circumstances. '[W]hen relief under section 473 is available, there is a strong public policy in favor of granting relief and allowing the requesting party his or her day in court. Beyond this period there is a strong public policy in favor of the finality of judgments.' " (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981-982.) "A party seeking relief under the court's equitable powers must satisfy the elements of a 'stringent three-pronged test': (1) a satisfactory excuse for not presenting a defense, (2) a meritorious defense, and (3) diligence in seeking to set aside the default." (*Kramer v. Traditional Escrow, Inc.* (2020) 56 Cal.App.5th 13, 29 (*Kramer*).)

An order vacating a default judgment is appealable as an order made after final judgment. (Code Civ. Proc., § 904.1, subd. (a)(2); *Moghaddam v. Bone* (2006) 142 Cal.App.4th 283, 287.) "We review the court's [ruling on] a motion for equitable relief to vacate a default judgment or order for an abuse of discretion, determining whether that decision exceeded the bounds of reason in light of the circumstances before the court. [Citation.] In doing so, we determine whether the trial court's factual findings are supported by substantial evidence [citation] and independently review its statutory interpretations and legal

5

conclusions." (*County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1230.)

## B. The Trial Court Did Not Abuse Its Discretion by Granting Equitable Relief from the Default Judgment

### 1. Satisfactory Excuse

" ' "Although the policy of the law is to favor a hearing on the merits of a case, courts are not required to set aside default judgments for defendants who flagrantly ignore the responsibility to present a defense. . . . The defendant must . . . demonstrate a satisfactory excuse for not responding to the original action in a timely manner." ' [Citation.] A defendant has a satisfactory excuse if it shows that an extrinsic fraud or extrinsic mistake occurred." (*Kramer, supra*, 56 Cal.App.5th at p. 29.)

"In this context the terms 'fraud' and 'mistake' have been given a broad meaning by the courts, and tend to encompass almost any set of extrinsic circumstances which deprive a party of a fair adversary hearing. [Citation.] The term 'extrinsic' refers to matters outside of the issues framed by the pleadings, or the issues adjudicated." (*Aldrich v. San Fernando Valley Lumber Co.* (1985) 170 Cal.App.3d 725, 738 (*Aldrich*).) "Mistake has been defined as ' ". . . the doing of an act under an erroneous conviction, which act, but for such conviction, would not have been done." ' [Citation.] The same reasoning logically applies to a failure to act,—an omission." (*Ibid.*)

Here, Capital explained that it made no response to the complaint and default because it had been effectively abandoned by the positive misconduct of its attorney—complete abandonment—and thus did not know about them.

6

"[W]here the client is relatively free from negligence, and the attorney's neglect is of an extreme degree amounting to positive misconduct, the attorney's conduct is said to obliterate the existence of the attorney-client relationship.  [Citations.]  The client in such a case has representation only in a nominal and technical sense." (*Aldrich, supra*, 170 Cal.App.3d at pp. 738-739.) "Clients should not be forced to act as hawk-like inquisitors of their own counsel, suspicious of every step and quick to switch lawyers.  The legal profession knows no worse headache than the client who mistrusts his attorney." (*Daley v. Butte County* (1964) 227 Cal.App.2d 380, 392.)  "Positive misconduct is found where there is a total failure on the part of counsel to represent his client." (*Aldrich*, at p. 739; see also *People v. One Parcel of Land* (1991) 235 Cal.App.3d 579, 584 [defense attorney's "absolute failure to oppose the default judgment motion, as well as his apparent failure to return any of [the client's] telephone calls, suggests positive misconduct through a total failure to represent his client"].)

Coleman, Capital's former in-house counsel, declared that he effectively abandoned his client due to personal health and family issues.

This constitutes substantial evidence on which the trial court could reasonably find extrinsic mistake sufficient to absolve Capital of responsibility for Coleman's inexcusable neglect.

Antich argues that Coleman "claims he only missed work between May 2019 and August 2019 but provides no explanation as to why he could not attend to this matter in the subsequent seventeen months." That is not the record.  Coleman declared he was "sick during [his] time at Capital" and was "overwhelmed with urgent family matters for months on end."  It is undisputed

that when he left Capital in May 2020, the firm's legal affairs were in substantial disarray. From this record the court could reasonably conclude that Coleman's disability extended all the way to the time he left Capital.

Antich argues her attorney gave Coleman every opportunity to respond to her complaint and seek to vacate the default but he simply declined to do so, which constitutes negligence, not mistake. This is conceded. But the question is whether Coleman's total failure to provide adequate legal services constituted an abandonment sufficient to absolve Capital of responsibility for Coleman's inexcusable neglect.

This was a factual matter for the trial court to decide. "We do not substitute our judgment for that of the trial court" in resolving factual disputes. (*In re Marriage of de Guigne* (2002) 97 Cal.App.4th 1353, 1360.) Instead, as noted above, we review the trial court's factual findings only for substantial evidence. (*County of San Diego v. Gorham*, *supra*, 186 Cal.App.4th at p. 1230.) " 'In applying this standard of review, we "view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor." ' " (*Pope v. Babick* (2014) 229 Cal.App.4th 1238, 1245.) We are not a second trier of fact.

We conclude that substantial evidence supported the trial court's finding that Capital had a satisfactory excuse for not responding to the original action in a timely manner.

## 2. Meritorious Defense

The second requirement for equitable relief from a default judgment is to establish a meritorious case. To meet this requirement, "only a minimal showing is necessary. [Citation.] The moving party does not have to guarantee success, or

8

'demonstrate with certainty that a different result would obtain. . . . Rather, [it] must show facts indicating a sufficiently meritorious claim to entitle [it] to a fair adversary hearing.' " (*Mechling v. Asbestos Defendants* (2018) 29 Cal.App.5th 1241, 1246; see also *Gruber v. Gruber* (2020) 48 Cal.App.5th 529, 532 [court analyzes the merit of a claim by accepting the claimant's evidence as true and evaluating whether the claim is legally and factually tenable].)

Here, Antich asserts claims under the FDCPA and CCRAA, alleging she paid her debt to the original creditor before it was referred to Capital for collection, and Capital should not have reported a past due amount to consumer reporting agencies.

However, both the FDCPA and CCRAA preclude liability due to a defendant's "bona fide error" if the defendant maintained reasonable procedures designed to avoid alleged errors. The FDCPA provides: "A debt collector may not be held liable in any action brought under this title if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." (15 U.S.C. § 1692k(c).) Similarly, the CCRAA provides: "A person who furnishes information to a consumer credit reporting agency is liable for failure to comply with this section, unless the furnisher establishes by a preponderance of the evidence that, at the time of the failure to comply with this section, the furnisher maintained reasonable procedures to comply with those provisions." (Civ. Code, § 1785.25, subd. (g).)

This is known as the "bona fide error defense," an "affirmative defense, for which the debt collector has the burden of proof." (*Reichert v. National Credit Systems, Inc*. (9th Cir.

9

2008) 531 F.3d 1002, 1006.)  A debt collector meets its burden under the defense by producing "evidence of 'reasonable preventive procedures' aimed at avoiding the errors."  (*Ibid*.)  The defendant debt collector must also show by a preponderance of evidence that the violation was unintentional.  (15 U.S.C. § 1692k(c).)

In support of its motion to set aside the default judgment, Nowicki declared that Capital (1) maintained a credit reporting system that screens out any account that has a zero balance, (2) maintained procedures to avoid credit reporting a debt that had already been paid, (3) had a procedure to delete an account if Capital was informed that the debt has been paid or settled, and (4) maintained a system wherein any zero-balance account that was previously credit reported triggered a "DA" (delete account) code to be sent to all consumer credit reporting agencies.

Accepting this evidence as true, it supports a legally and factually tenable bona fide error defense under the FDCPA and CCRAA.  Thus, even if Antich's allegation was correct that Capital improperly credit reported her medical debt, Capital had a colorable statutory defense.

This constitutes substantial evidence from which the trial court could reasonably conclude Capital possessed a sufficiently meritorious defense to entitle it to a fair adversary hearing.

Antich argues that Capital furnished information to Ms. Antich's credit reports that it knew or should have known was inaccurate.  But at this point that is merely an allegation, not a fact, and its truth and import would be matters for the trier of fact to determine.  Capital's only burden in moving to vacate the default judgment was to show it possessed an equally viable defense.

10

### 3. Diligence

"The final prong of the stringent three-part test . . . is whether defendants diligently tried to set aside the default once discovered." (*Rappleyea v. Campbell, supra*, 8 Cal.4th at p. 983.)

Nowicki declared that Capital first learned of the default and default judgment in June 2020, and spent the next couple of months trying to retain new in-house counsel to correct the various legal problems discovered by emergency counsel. Capital was unable until September 2020 to retain new in-house counsel to address the issues looming because of Mr. Coleman's nonfeasance, and was only then able to retain a California firm to respond to the default. All of this occurred within the first year of the Covid-19 pandemic, which was characterized by lockdowns, closures and delays that affected both the Los Angeles Superior Court and law firms alike.

This constitutes substantial evidence from which the trial court could reasonably conclude Capital diligently tried to set aside the default once discovered.

Antich argues that the seven months between Capital's discovery of the default judgment and its motion to set aside the default was unreasonable. But that was a factual matter for the trial court to decide in light of the relevant circumstances. Although courts have held that a defendant failed to act diligently by filing a motion several months after learning of a default judgment (e.g., *Kramer, supra*, 56 Cal.App.5th at p. 39 [eight months]; *Pulte Homes Corp. v. Williams Mechanical, Inc.* (2016) 2 Cal.App.5th 267, 270, 277-278 [four and a half months]; *Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488 [nine months]), here, the trial court could reasonably conclude that between Coleman's illness and family problems, the scope and

11

complexity of the legal entanglements he left behind, and the advent of the Covid pandemic, it was reasonable for Capital to take seven months to hire emergency counsel to examine the problem, retain new in-house counsel to ascertain the legal remedies available and proper procedures for obtaining relief, hire California counsel, and file its motion.  (See *Orange Empire National Bank v. Kirk* (1968) 259 Cal.App.2d 347, 355 [almost six months between the time of discovery of the judgment and the filing of the motion to vacate].)

Antich relies on *Sporn v. Home Depot USA, Inc.* (2005) 126 Cal.App.4th 1294, where a defendant unsuccessfully sought equitable relief from a default judgment, claiming the plaintiff and his counsel "obtained the judgment by stealth," were "laying in the weeds," engaged in "improper tactics" and obtained the default judgment through "acts and omissions which constituted extrinsic fraud."  (*Id*. at p. 1300.)  But that case involved allegations of extrinsic *fraud* which the defendant was unable to substantiate.  Capital asserts only extrinsic *mistake* and, as discussed, was able to substantiate its claim.

## DISPOSITION

The order is affirmed.  Respondent is to recover its costs on appeal.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

BENDIX, Acting P. J.                    WEINGART, J.

12